## UNITED STATES *v.* BRITTON.

1. The counts of an indictment against the president of a national banking association for making such a false entry on its books as is punishable under sect. 5209 of the Revised Statutes are sufficient if they are in the form hereinafter set forth, *post*, p. 656, as the offence is thereby alleged in apt terms, and with the requisite averments of time and place.

2. The counts which charge his fraudulent purchase of shares of the capital stock of the association are bad if they either fail to state for whose use the purchase was made, or if they state that it was made for the use of the association, or if they do not aver that it was not made in order to prevent loss on some previously contracted debt.

3. The counts which charge him with having wilfully misapplied the funds of the association, should aver that he did so for the benefit of himself or some person or body other than the association, and with intent to injure or defraud the association or some other person or body corporate.

4. The counts which charge his fraudulent purchase of the shares of stock, and allege that they were by him held "in trust for the use of said association, and that said shares were not purchased as aforesaid in order to prevent loss upon any debts theretofore contracted with said association in good faith," do not allege with sufficient certainty an offence under said sect. 5209.

5. The purchase of stock in violation of sect. 5201, if made with intent to defraud, and by one or more of the officers of the bank named in said sect. 5209, is not a crime punishable under the latter section.

CERTIFICATE of division in opinion between the judges of the Circuit Court of the United States for the Eastern District of Missouri.

Section 5209 of the Revised Statutes of the United States is as follows: —

"Every president, director, cashier, teller, clerk, or agent of any" national banking "association who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or

who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association or any agent appointed to examine the affairs of any such association; and every person who, with like intent, aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

An indictment based on this section was, on Jan. 20, 1879, found against defendant, James H. Britton, in the District Court of the United States for the Eastern District of Missouri. It contained one hundred and nineteen counts. The first count charged as follows: —

" That James H. Britton, late of said district, on the thirtieth day of June, in the year of our Lord one thousand eight hundred and seventy-six, at said district, being then and there president of a certain national banking association then and there known and designated as the ' National Bank of the State of Missouri, in St. Louis,' which said association had been theretofore created and organized under and by virtue of an act of Congress, entitled ' An Act to provide a national currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June third, in the year of our Lord one thousand eight hundred and sixty-four, and which said association was then and there acting and carrying on a banking business in the city of St. Louis, in said district, under the said act of Congress and the acts amendatory thereof, did make in a certain book then and there belonging to and in use by the said association in transacting its said banking business, and then and there designated and known as ' profit and loss, number six,' a certain entry to the credit of a certain account known as profit and loss, which said entry was then and there in the words and figures following, that is to say: —

' RICHARD L. DICKSON :
'182 days' int., 8 per cent., 132,673.49, to July 1, '76 . . . 5,365.88 '

and which said entry, so as aforesaid made in said book, then and there purported to show, and did, in substance and effect,

indicate and declare, that the sum of five thousand three hundred and sixty-five dollars and eighty-eight cents was then and there received by said association, on account of interest then and there due and payable to said association by one Richard L. Dickson.

"And the jurors aforesaid, on their oaths aforesaid, do further present that the said entry so made as aforesaid was then and there false in this, that the said sum of five thousand three hundred and sixty-five dollars and eighty-eight cents was not then and there received by said association on account of interest then and there due and payable to said association from the said Richard L. Dickson, as he, the said James H. Britton, then and there well knew ; and that the said entry, so made as aforesaid, was then and there false in this, that the said sum of five thousand three hundred and sixty-five dollars and eighty-eight cents was not then and there received by said association upon any account from any source, as he, the said James H. Britton, then and there well knew; and that the said false entry was then and there made as aforesaid with the intent then and there on the part of him, the said James H. Britton, to deceive any agent who might be thereafter appointed by the Comptroller of the Currency to examine the affairs of said association, contrary to the form of the statute of the United States in such case made and provided, and against their peace and dignity."

The thirty-four counts next following, numbered from 2 to 35, inclusive, charged, in the same language, the making of similar false entries in the same book with the same intent.

The thirty-sixth count was in all respects similar to the preceding thirty-five counts, except that it omitted the averment that the false entry was made with the intent "to deceive any agent who might be thereafter appointed by the Comptroller of the Currency to examine the affairs of said association," and in lieu thereof alleged it to be with intent "to injure and defraud the said association and certain persons to said jurors unknown."

The thirty-seventh count charged as follows : "That the said James H. Britton, late of said district, on the second day of April, in the year of our Lord one thousand eight hundred

and seventy-seven, at said district, being then and there president of a certain national banking association then and there known and designated as the 'National Bank of the State of Missouri, in St. Louis,' which said association had been theretofore created and organized under and by virtue of an act of Congress, entitled 'An Act to provide a national currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June third, in the year of our Lord one thousand eight hundred and sixty-four, and which said association was then and there acting and carrying on a banking business in the city of St. Louis, in said district, under the said act of Congress and the acts amendatory thereof, did pay to a certain person, to the jurors aforesaid unknown, a large sum of money, to wit, twenty-four hundred dollars, out of the moneys and funds then and there belonging to and the property of said association, in the purchase by him, the said James H. Britton, from said unknown person, of a large number, to wit, forty certain shares of the capital stock of said association, which said shares of stock were then and there represented upon the books of said association to be the property of one Francis Fisher.

"And the jurors aforesaid, on their oaths aforesaid, do further present that the said James H. Britton, president as aforesaid, did then and there, by means of the payment aforesaid, in manner and form aforesaid, wilfully misapply the said sum of twenty-four hundred dollars of the moneys and funds as aforesaid of said association, with intent then and there, on the part of him, the said James H. Britton, to injure and defraud the said association and certain persons, to the jurors aforesaid unknown, contrary to the form of the statute of the United States in such case made and provided, and against their peace and dignity."

The next following nineteen counts, numbered from 38 to 56, inclusive, are similar to count 37, and need not be set out.

The next succeeding counts, numbered from 57 to 76, inclusive, but excepting the seventy-fourth, are similar to count 37, except that they omit the averment that the misapplication was made with intent " to injure and defraud the said

association and certain persons to the jurors aforesaid unknown." These counts aver no intent whatever. The seventy-fourth count is similar to the thirty-seventh.

The next twenty counts, numbered from 77 to 96, inclusive, are in all respects similar to count 37, except that they contain the following additional averment, forming the conclusion of the first clause of the count, namely, " and which said shares of stock, so purchased as aforesaid, were then and there held by him, the said James H. Britton, in trust for the use of said association, and which said shares of stock were not purchased as aforesaid in order to prevent loss upon any debt theretofore contracted with said association in good faith."

The next twenty counts, numbered from 97 to 116, are all similar to count 96, except that they omit the averment that the misapplication of the funds of the association was with the intent " to injure and defraud the said association and certain persons to the jurors aforesaid unknown." These counts charge no intent.

The count numbered 117 was similar to count 36, and count numbered 118 was similar to count 1.

As no division of opinion respecting count numbered 119 is certified, it is unnecessary to notice that count.

The defendant demurred to the indictment. By order of the District Court the indictment was, on May 16, 1879, remitted and transferred to the next regular term of the Circuit Court of the United States for the Eastern District of Missouri, at which term the cause was heard upon the demurrer. Upon such hearing the following questions arose, upon which the judges of the Circuit Court were divided and opposed in opinion, namely : —

1st, Whether it was necessary, in the counts of said indictment charging a fraudulent purchase by the defendant of certain shares of the capital stock of said association, to state for whose use the purchase was made, and whether, where it is charged in the indictment that the purchase of stock was made for the use of the bank, such averment vitiates the indictment.

2d, Whether it was necessary in the said counts to allege

that the purchase of stock was not made in order to prevent loss on some previously contracted debt.

3d, Whether it was necessary in the said counts to set forth the means by which the defendant, as president of said bank, possessed himself of the moneys of the bank, which he employed in purchasing said stock.

4th, Whether it was necessary to charge in the said counts that the defendant, as president of the bank, was in possession of the funds of the bank, in addition to charging misapplication of said funds.

5th, Whether the counts of said indictment charging the fraudulent purchase by the defendant, as president of said banking association, of certain shares of stock "in trust, for the use of said association, and which said shares of stock were not purchased as aforesaid in order to prevent loss upon any debts theretofore contracted with said association in good faith," alleged with sufficient certainty an offence under said sect. 5209 of the Revised Statutes of the United States.

6th, Whether count numbered 116 of the said indictment charges with sufficient certainty an offence under said sect. 5209 of the Revised Statutes of the United States.

7th, Whether it is necessary in an indictment under sect. 5209 of the Revised Statutes, charging wilful misapplication of the funds of a banking association, to allege that such misapplication was with intent to defraud.

8th, Whether the purchase of stock in violation of sect. 5201 of the Revised Statutes of the United States, if made with intent to defraud, and by one or more of the officers of the bank named in said sect. 5209 of the Revised Statutes, is a crime punishable under the latter section.

9th, Whether those counts which cover alleged false entries sufficiently state an offence under sect. 5209.

These questions, together with the pleadings upon which they arose, were, on motion of counsel for the United States, certified by the judges of the Circuit Court to this court for its opinion thereon.

*Mr. Assistant Attorney-General Maury* for the United States.

*Mr. Chester H. Krum* for the defendant.

MR. JUSTICE WOODS delivered the opinion of the court.

In passing upon the questions certified to us by the Circuit Court, it will be convenient to follow the order in which they have been argued by counsel, rather than that in which they are presented by the certificate.

The section of the Revised Statutes upon which the indictment is based creates and describes certain offences, and expressly denominates them misdemeanors. In *United States* v. *Mills*, 7 Pet. 138, 142, it was said by this court that "the general rule is that in indictments for misdemeanors created by statute, it is sufficient to charge the offence in the words of the statute. There is not that technical nicety required as to form which seems to have been adopted and sanctioned by long practice in cases of felony, and with respect to some crimes, where particular words must be used, and no other words, however synonymous they may seem, can be substituted. But in all cases the offence must be set forth with clearness, and all necessary certainty to apprise the accused of the crime with which he stands charged."

In *United States* v. *Simmons*, 96 U. S. 360, 362, this court, speaking by Mr. Justice Harlan, held, that "when the offence is plainly statutory, it is, 'as a general rule, sufficient in the indictment to charge the defendant with acts coming within the statutory description in the substantial words of the statute, without any further expansion of the matter.' . . . But to this rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised in the indictment with reasonable certainty of the nature of the accusation against him, to the end that he may prepare his defence and plead the judgment as a bar to any subsequent prosecution for the same offence."

So in *United States* v. *Carll*, 105 id. 611, 612, it was said by Mr. Justice Gray, speaking for the court, that "in an indictment upon a statute it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law and of other

statutes on the like matter, enables the court to infer the intent. of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case. within that intent."

In *United States* v. *Pond*, 2 Curt. C. C. 265, the rule was thus stated by Mr. Justice Curtis: "It must be remembered that this is an indictment for a misdemeanor created by the statute, and that in general it is sufficient to describe such an offence in the words of the statute, unless they embrace cases which it was not the intention of the legislature to include within the law. If they do, the indictment should show that this is not one of the cases thus excluded."

Applying the rules thus laid down to the counts of the indictment, we are to consider whether they sufficiently state an offence under sect. 5209 of the Revised Statutes.

To describe the offence charged in the first thirty-six counts of the indictment, sect. 5209 requires the following averments:

1. That the accused was the president or other officer of a national banking association, which was carrying on a banking business.

2. That being such president or other officer, he made in a book, report, or statement of the association, describing it, a false entry, describing it.

3. That such false entry was made with intent to injure or defraud the association, or to deceive any agent, describing him, appointed to examine the affairs of the association.

4. Averments of time and place.

An examination of the counts under consideration shows that they contain all these averments pleaded with clearness and reasonable certainty. They must, therefore, be held sufficient, unless some of the objections made to them by counsel for defendant are well taken.

It is urged that these counts are defective, because they do not contain an averment that the false entry was made " in an account of and in the due course of business of the bank." Neither of these averments is required by the statute. It is alleged that the false entry was made in a book belonging to and in use by the association in transacting its banking business, and known and designated as " profit and loss, num-

ber six." To hold this insufficient would carry refinement in criminal pleading to an impracticable extent. The counts point out to the defendant and the court, with certainty and precision, the book used by the association in which the false entry was made, and this is all that is necessary under the statute.

It is next objected that the false entries as set out in the counts do not of themselves have any significance, and are unintelligible without explanation. This is mere assumption. Conceding that the entries may be unintelligible to persons not skilled as accountants, it does not follow that they are so to the agent appointed by the Comptroller, who, it is alleged, was the person whom the entries were intended to deceive. But, if the entries needed explanation, it was perfectly competent for the pleader to explain them by innuendo. *Rex* v. *Griepe*, 1 Ld. Raym. 256; *Rex* v. *Aylett*, 1 T. R. 63; *Rex* v. *Taylor*, 1 Camp. 404; *Reg.* v. *Virrier*, 12 Ad. & E. 317; *Mix* v. *Woodward*, 12 Conn. 262; *Van Vechten* v. *Hopkins*, 5 Johns. (N. Y.) 211. This he has done by averring what the entries purported to show, and did, in substance, indicate and declare. Having explained the entries, he avers them to be false. To hold this insufficient would be to decide that the making of false entries, in the books of a banking association, in the usual method of book-keeping, and which were intelligible to all accountants, could not be punished under the statute because not intelligible to persons generally, or to persons not skilled in book-keeping.

It is next objected that the counts under consideration are argumentative and repugnant, because they do not allege that interest was due to the association from the individuals named, in the alleged false entries.

This objection is not well founded. Whether interest was due or not is quite immaterial. The charge is that a false entry was made on the books of the association which purported that a certain sum was, on a day named, received from a person named, on account of interest then and there due from him to the association; that the said sum was not then and there received on account of interest due, and was not received on any account from any sources whatever. The falsity of the entry

does not consist in the fact that there was no interest due from the person named, but in the fact that money, which the entries declared had been received from him on account of interest due, had not been received from him on that or any other account. It was, therefore, entirely unnecessary to aver that no such interest was due, and the want of such averment does not render the counts argumentative or repugnant.

It is further objected to these counts that a false entry to the credit of profit and loss alone could not deceive a bank examiner, and, therefore, that the counts are repugnant. This is also mere assumption. But if the false entry is calculated to deceive, the making of it in the books of the association, with intent to deceive, is all that is necessary to bring the act within the meaning of the statute. It is perfectly apparent that any false entry in any account-book of a bank used in transacting its banking business is calculated to deceive. The fact that its falsity may be exposed by an examination of other books of account, does not render it any the less a false entry made with intent to deceive. The circumstance that the attempt to deceive by making a false entry was not an adroit and skilful one, does not relieve the act of its criminal character.

It is further contended that the counts under consideration are insufficient, because it is not alleged that at the time the false entries were made an agent had been appointed to examine the affairs of the association. This objection is based on the theory that the statute was designed to punish only those officers of a banking association who made false entries in its books with intent to deceive examiners appointed before the false entries were made. We do not think the statute will bear this construction.

The appointment of agents to examine the affairs of national banking associations is provided for by sect. 5240 of the Revised Statutes, which declares: "The Comptroller of the Currency, with the approval of the Secretary of the Treasury, shall as often as shall be deemed necessary or proper, appoint a suitable person or persons to make an examination of the affairs of every banking association, who shall have power to make a thorough examination into all the affairs of the association."

It appears from this section that the appointment of these agents is not permanent, but occasional and temporary, and that the appointments are made as often as shall be deemed necessary and proper. It is, therefore, apparent that the statute which punishes false entries, made with intent to deceive such agents, refers to any entries made with that intent whether before or after the appointment of the agent.

There is nothing impossible in the averment that false entries have been made with intent to deceive an agent to be appointed after they are made. The agents are often purposely appointed without notice to the association. The fact that the Comptroller of the Currency has information that the officers of an association are making false entries in its books may be the occasion for appointing an agent to examine its affairs. To hold that the officers of the association would only be punishable for false entries made after an agent had been appointed would rob the law of a large part of its salutary effect. Its purpose is clear, to punish all false entries in the books of the bank, no matter when made, if made with intent to defraud the association or deceive the examiner. We think that in respect to the point under consideration the indictment is sufficient.

We are of opinion that none of the objections raised to the first thirty-five counts are well taken. They are refined and unsubstantial, and not sustained by the rules of criminal pleading in cases of misdemeanor, or by the fair construction of the statute on which the indictment is based. These counts embody the language of the statute; they charge every element of the offence created by the statute with sufficient certainty, and give the defendant clear notice of the charge he is called on to defend. They are, therefore, sufficient. *United States v. Cook*, 17 Wall. 168, and cases already cited.

The thirty-sixth count differs from the first thirty-five in charging the intent with which the offence was committed. The intent is charged to be "to injure and defraud the said association, and certain persons to the grand jurors unknown." This follows the language of the statute.

Clearly it is possible to injure and defraud the association or its stockholders or other persons, by false entries in its account

of profit and loss. The charge is not repugnant or impossible. We are of opinion, therefore, that the first thirty-six counts of the indictment, being those which charge false entries in the books of the association, sufficiently state an offence under sect. 5209. It follows that count 117, which is in all respects similar to count 1, and count 118, which is in all respects similar to count 36, are good and sufficient.

We shall next consider count numbered 77 and the similar counts. That portion of the section on which they are based makes it an offence for the president or other officer of a banking association to embezzle, abstract, or wilfully misapply the moneys of the association with intent to injure or defraud the association or any company or person.

The seventy-seventh count of the indictment charged that the defendant, being president of the association, paid to a certain person unknown the sum of $2,400 of the moneys of the association in the purchase of forty shares of its capital stock, which stock, so purchased, was held by the defendant in trust for the use of the association, and the same was not purchased to prevent loss on any debt theretofore contracted with the association in good faith, and that so the defendant did wilfully misapply the moneys of the association with intent to injure and defraud the association and certains persons to the grand jurors unknown.

The question is propounded to us, whether this count sufficiently describes an offence under sect. 5209 of the Revised Statutes.

The purchase of its own stock by the association, except to secure a debt due it, is forbidden by law. Is a purchase for the use of a banking association of its own stock by its president, when not necessary to secure a debt due the association, a wilful misapplication of its funds, punishable by sect. 5209?

We think the wilful misapplication made an offence by this statute means a misapplication for the use, benefit, or gain of the party charged, or of some company or person other than the association. Therefore, to constitute the offence of wilful misapplication, there must be a conversion to his own use or the use of some one else of the moneys and funds of the asso-

ciation by the party charged. This essential element of the offence is not averred in the counts under consideration, but is negatived by the averment that the shares purchased by the defendant were held by him in trust for the use of the association, and there is no averment of a conversion by the defendant to his own use or the use of any other person of the funds used in the purchase of the shares. The counts, therefore, charge maladministration of the affairs of the bank, rather than criminal misapplication of its funds.

If we hold these counts to be good, then every official act of any officer, clerk, or agent of a banking association, by which its funds are applied in a way not authorized by law, would be punishable under sect. 5209.

For instance, sect. 5200 of the Revised Statutes declares that " the total liabilities to any association of any person, . ... for money borrowed. . . . shall at no time exceed one-tenth part of the capital stock of the association actually paid in." Sect. 5201 provides that no association shall make any loan or discount on the security of the shares of its own capital stock, unless such security shall be necessary to prevent loss on a previously contracted debt. If the counts under consideration are sustained, then every president, director, cashier, teller, clerk, or agent of a banking association who has any part in lending the money of the association contrary to the provisions of these sections, is guilty of a criminal misapplication of its funds.

So, by sect. 5137 of the Revised Statutes, the purposes for which a banking association may purchase and hold real estate are limited and specifically pointed out. If the directors of a banking association should authorize the purchase of a piece of real estate for its use, but not for purposes authorized by the statute (even though with intent to injure some corporate body or natural person), it could hardly be claimed that the directors who made the order, and the other officers or agents of the association who (with a like intent) had any hand in making the purchase or in paying out the money of the bank therefor, would be liable to indictment and imprisonment under sect. 5209.

The acts charged by the counts under consideration are precisely of the same character as those just mentioned. They

are acts of maladministration of the affairs of the association by its officers. The penalty for such acts is prescribed by sect. 5239, which declares: " If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this title (national banks), all the rights, privileges, and franchises of the association shall be thereby forfeited. . . . And in case of such violation, every director who participated in or assented to the same shall be held liable, in his personal and individual capacity, for all damages which the association, its shareholders, or any other person shall have sustained in consequence of such violation."

We are, therefore, of opinion that the wilful misapplication of the moneys and funds of the banking association, which is made an offence by sect. 5209, means something different from the acts of official maladministration referred to in sect. 5239, and it must be a wilful misapplication for the use or benefit of the party charged, or of some person or company other than the association, with intent to injure and defraud the association or some other body corporate or some natural person.

As the counts under consideration, namely, count 77, and the similar counts down to and including count 96, do not show that the wilful misapplication therein alleged was made by the defendant for his own use, benefit, or advantage, but for the use of the association, we are of opinion that they do not allege an offence under sect. 5209, and are, therefore, insufficient and bad.

The counts are, in our opinion, bad also for repugnancy. They aver that the defendant purchased the shares of the association, and held them in trust for the association. This charge, without further averments, is clearly repugnant. It is true that it is possible for an officer of a banking association, with intent to defraud it, to misappropriate its funds in the purchase for its use of its own stock. But the count which avers such an act should also make other averments to show that the application was not merely a use of the money for the benefit of the association forbidden by law, but a criminal misapplication, by which it was possible that the association could be defrauded.

For the reasons assigned, the counts next following, numbered from 97 to 116, inclusive, which are similar to count 77, except that they severally fail to aver that the act therein charged was done with intent to injure and defraud, must be held to be insufficient.

The counts last mentioned, as well as the counts numbered from 56 to 76, inclusive, are bad for the further reason that they fail to aver any intent to injure and defraud mentioned in sect. 5209. The intent to injure and defraud is an essential ingredient to every offence specified in the section, and the failure to aver the intent is a fatal defect in the counts in which it occurs.

We shall next consider count numbered 37 and the counts which are similar to it. These counts simply charge that the defendant, being president of the association, wilfully misapplied its moneys and funds by buying therewith certain shares of its stock, with intent to injure and defraud the association and certain persons to the grand jurors unknown.

The words "wilfully misapplied" are, so far as we know, new in statutes creating offences, and they are not used in describing any offence at common law. They have no settled technical meaning like the word "embezzle" as used in the statutes, or the words "steal, take and carry away," as used at common law. They do not, therefore, of themselves fully and clearly set forth every element of the offence charged. It would not be sufficient simply to aver that the defendant "wilfully misapplied" the funds of the association. This is well settled by the authorities we have already cited. There must be averments to show how the application was made and that it was an unlawful one. These averments the pleader has in these counts attempted to make by charging that the defendant paid out the funds of the association in the purchase of its own stock. But this is not necessarily an unlawful use of the funds of the association. It is not every purchase of its own shares by an association that is forbidden. The very section (5201) and sentence of the statute which declares that no banking association shall be a purchaser of its own shares, contains the exception "unless such purchase shall be necessary

to prevent loss upon a debt previously contracted in good faith." This exception should have been negatived in these counts. The rule of pleading as laid down by Mr. Chitty is that "when a statute contains provisos and exceptions in distinct clauses it is not necessary to state in the indictment that the defendant does not come within the exceptions, or to negative the provisos it contains. On the contrary, if the exceptions themselves are stated in the enacting clause it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute." 1 Chitty, Crim. Law, 283 *b*, 284.

Thus, where a statute declared that if one on the Sabbath day "shall exercise any secular labor, business, or employment, except such only as works of necessity and charity, he shall be punished," &c., a negative of the exception was held indispensable. *State* v. *Barker*, 18 Vt. 195. See also *Commonwealth* v. *Maxwell*, 2 Pick. (Mass.) 139; 1 East, P. C. 167; *Spicres* v. *Parker*, 1 T. R. 141; *Gill* v. *Scrivens*, 7 id. 27; 1 Bishop's Crim. Pro., sect. 636.

The failure of the counts under consideration to aver that the purchase of the shares of the association was not necessary to prevent loss upon a debt previously contracted in good faith is a fatal defect. These counts merely charge that the defendant wilfully misapplied the funds of the association and then aver a use of the funds, which, from all that appears to the contrary, was a perfectly lawful application of them. The result is that no offence is described in the counts numbered from 37 to 56, inclusive, and that they are, therefore, insufficient and bad. It also follows that counts numbered from 57 to 76, inclusive, which are similar to the series just mentioned, except that they contain no charge of intent to injure and defraud, are also bad.

What we have said disposes of all the questions propounded to us which it is necessary that we should answer.

We answer the first, second, seventh, and ninth questions in the affirmative, and the fifth, sixth, and eighth questions in the negative.

From these answers it appears that all the counts from the thirty-seventh to the one hundred and eighteenth, inclusive, are

insufficient and bad.   We therefore decline to answer the third and fourth questions, which relate to the same counts.   *United States* v. *Buzzo*, 18 Wall. 125.