UNITED STATES *v.* OWENS.

*(Circuit Court, W. D. Tennessee.    December 12, 1888.)*

1. COUNTERFEITING — INDICTMENT — LIKENESS AND SIMILITUDE OF TREASURY NOTES.
    It is not essential, in an indictment for counterfeiting United States compound-interest treasury notes, to aver that the alleged counterfeits are in the likeness and similitude of genuine notes authorized by the act of congress under which they purport to have been issued.    This may sometimes be necessary under special statutes creating specific offenses as to particular issues of government securities, but not under section 5431 of Revised Statutes, as interpreted by section 5413, providing a general law for punishing the forgery of any and all of the obligations or securities of the United States.

2. SAME — DESCRIPTION OF OFFENSE.
    The use of the words "false, forged, and counterfeited obligation of the United States" in the statute and in an indictment following its language, to describe the offense, is sufficient to imply, without more, that the alleged counterfeit set out *in hæc verba* in the indictment purports to be a genuine obligation of the United States, and that it is likewise intended to aver that there is or was outstanding or authorized by law a genuine obligation of which the alleged imitation was intended to be a forgery or counterfeit.

Indictment for Counterfeiting.    On motion in arrest of judgment.
*H. W. McCorry*, U. S. Dist. Atty., and *H. C. Anderson*, Asst. U. S. Dist. Atty.
*John J. Du Puy*, for defendant.

HAMMOND, J.    The indictment in this case is for a violation of Revised· Statutes, § 5431, by passing, or attempting to pass, concealing, with intent to defraud, and having in possession with like intent, two counterfeited compound-interest treasury notes of the United States, of date July 15, 1864, which are set out *in hæc verba* in all' the counts of the indictment.    It is only necessary to· quote the following clause in the first count, the others being similar, to explain the objections that are now made to the indictment on this motion to arrest the judgment: "That said defendant did feloniously utter, publish, and attempt to pass a certain false, forged, and counterfeited obligation of the United States, to-wit, a certain false, forged, and counterfeited United States compound-interest treasury note of the denomination of fifty dollars, which .said false, forged, and counterfeited United States compound interest treasury note is as follows, that is to say:" (and here it is copied *verbatim* in the pleading.)    It is objected that this pleading does not say in terms that this alleged counterfeited note is in the likeness or similitude of any genuine obligation of the United ·States, and that it does not aver that

any genuine note of the United States has been authorized by law, or is or ever was in circulation as an obligation of the United States. As to the latter branch of the objection, it may be said now, as it was ruled on the trial upon objections to evidence, that we take judicial notice of the acts of congress authorizing the obligations of the United States, and that the form and substance of those obligations, when issued, like the forms of the coins that are minted by law, and especially such as are used as money, as the genuine notes of this issue were, become a matter of common knowledge, that need be neither averred nor proved on a trial for forging or counterfeiting them, especially under a statute framed, as this was, to protect all the obligations or securities of the United States from such depredations. There may be special offenses created to protect particular issues or securities "issued under this act," as the phrase usually runs; and, indeed, that was the common practice at first, as the history of this legislation shows, to include in an act, authorizing the issue of an obligation, provisions to protect that security from forgery and all forms of counterfeiting; and possibly, under some or any of those special acts, it would be necessary to aver (and the omission might be fatal) that the given security was issued under that particular act so as to set forth the especial and particular offense which that act might define and punish, the definition and the punishment being alike especial and particular. The obvious advantage of a general statute was so great that by the act of June 30, 1864, (chapter 172, § 10, 13 St. 221,) this section of the Revised Statutes was first enacted in the broadest possible terms to cover the forgery or counterfeiting of "any obligation or other security of the United States." This and other sections have been consolidated and broken up in the revision for convenience of systematic arrangement; but now, as at first, they constitute a general criminal code against the forgery and counterfeiting of these securities. And to make the matter still more certain, a statutory definition was given of the words "obligation or other security of the United States," which has been from time to time so extended that it appears in the Revised Statutes (section 5413) so broad that it includes almost everything one can think of as an obligation of the United States, even including postage stamps, issued under any act of congress. Rev. St. 5413, (act 1864, c. 172, § 13, 13 St. 222.) Therefore, even where special provision is made against counterfeiting particular securities, as for example, by Rev. St. § 5415, protecting national bank-notes, it may be that the prosecuting district attorney has his choice to proceed under the special act or under this more general law against all counterfeiting of any obligation or security, since we see that class of notes included in the statutory definition. Rev. St. § 5413. Be this as it may, under the general law the courts are commanded, as all others are, to hold those words to mean—and they are the words used in this indictment—"all treasury notes issued under any act of congress," to apply them to this case. Id. It must be, therefore, that these words are sufficient in the indictment to indicate the existence of, and the form and substance of, the genuine notes, without any more especial description than is furnished by their use. In other words, the

language of the statute itself sufficiently describes the offense, without more; and the averments here that the obligation counterfeited was "a United States compound-interest treasury note," etc., accompanied with the most minute description *in hæc verba* of the alleged forgery itself, were ample to answer the constitutional requirement that the defendant should have notice of that which he is called upon to defend. *U. S. v. Britton*, 107 U. S. 655, 661, 2 Sup. Ct. Rep. 512; *U. S. v. Carll*, 105 U. S. 611; *U. S. v. Jolly, ante*, 108.

The state decisions referred to concerning acts of the legislature authorizing private corporations to issue bank-notes, and deciding that the authority to issue the notes and the fact of issuing them should be averred in an indictment for counterfeiting them, are not in point, in my judgment. Those are in the nature of private notes circulated as currency by law, and those facts are perhaps essential, under the statutes or the common law punishing their forgery or use as counterfeits, to be averred; but the United States' statutes proceed upon a broader ground to punish by general law, designed especially for that purpose, all forging and counterfeiting of any of its obligations or securities, and congress may make the law according to its wisdom as long as the defendant's constitutional right to be informed of the statutory offense with which he is charged be not invaded, but protected, by either so describing the offense in the statute that he shall know, or supplementing the statute by the averments of the indictment.

The other branch of the objection to the indictment is quite nearly akin to that already considered. The force of it may be stated to be a complaint that the indictment avers a conclusion of fact, and not the substantial acts of the defendant constituting the offense, by merely alleging that the note was "false, forged, and counterfeited," and not alleging that it was "in the likeness and similitude" of the genuine note. The statute does not contain these last quoted words, nor does the other section denouncing the act of the forgery itself contain them. Rev. St. §§ 5414, 5431. The statute against counterfeiting the coin does contain them, but the two must not be confounded. Id. § 5457. What has been said about the fullness of the implications of the words "obligation or other security of the United States," and the statutory definition of them, as used in the section constituting this offense, and necessarily also when used in an indictment following the statutory words so defined, applies with full force here. They necessarily imply under that definition that an averment in those words of "a certain false, forged, and counterfeited obligation of the United States" is based upon a mental substitution of the preceding and essential notion of a genuine note to be counterfeited; that is to say, that this instrument alleged to be false, forged, and counterfeited is in the similitude and likeness of a genuine "obligation of the United States" of the same tenor, purport, and effect, if I may so express it. Fortunately, I find this point distinctly decided and cleared up by the supreme court of the United States, though it was not there presented in precisely the same way that it is here; for in that case the indictment, which was under one of the special acts I have referred to punishing the

counterfeiting of securities "issued under the authority of this act," did aver that the false note purported to be issued under the authority of that act of congress, and perhaps, as I have already endeavored to explain, that averment was necessary, under such a special law. But it will be observed there was there as here no averment of any genuine note being either authorized or issued, only that the false note purported to be under the given act of congress, etc. The objection was made that a false note was no note at all, and it was quite immaterial that it should purport to be issued under an act of congress. It was none the better for such purport, and congress had not made it an offense to issue a false note pretending to be issued by authority of congress, and therefore there was a fatal repugnancy, since the allegation of its being false, and the allegation of its being issued by a purported authority, were inconsistent; and this infirmity extended to the statute as well as to the indictment. The supreme court, overruling a former decision, perhaps,—for that court rarely admits that it overrules one of its own decisions, but leaves other courts to determine whether it does or not, as best they may, —held, as we do here, that what is meant by a "false, forged, and counterfeited" bank-note is "a forged paper in the similitude of a bank-note, or which on its face appears to be such a note," to use the language of Mr. Justice MILLER. This implication for supplying that which is left out, and which the best pleading, I have no doubt, ought not to leave to implication, is all the stronger under these general laws and the sections of the Revised Statutes which have been already fully cited, than they were in that case of *U. S.* v. *Howell,* 11 Wall. 432, 436; and on its authority the objection made here seems not to be well taken, plausible as it is, and was thought to be in that case. But it may be added, by way of caution, that the words which this objection suggests as those which ought not to have been omitted—that the forged note was "in the likeness and similitude" of the genuine note—are not in this statute, and perhaps were intentionally left out for a better reason than that the reader might be left to "mentally supply the ellipsis," as the court says we may properly do as above indicated. And this reason may be suggested as an intention on the part of congress to widen the description of the offense, and punish the forgery and counterfeiting of the obligations of the United States when the forgeries were not in the likeness and similitude of any genuine notes. Suppose, for instance, these counterfeits, instead of being printed in green and black colors with golden tints upon the face, had been printed in red and black, would they have been any less counterfeits under these acts of congress? The objection here implies they would, but I am not willing to agree to that implication, since there may be an intention to punish the forging of the "obligation," however and in whatever form the words of the obligation and its signatures may be written or printed, and however far the counterfeit may depart from the form of the genuine. Coin is not an obligation of the United States, but is the thing itself,—money,—and likeness and similitude are essential; but these promises to pay of the United States should not be forged or counterfeited in any form whatever. This point is not presented for discus-

sion, of course, but it is well enough to suggest that we should reserve any sanction of the idea that "likeness and similitude" are in all respects essential under these statutes to establish a counterfeit.

The importance of an allegation as to the existence of a genuine note is made somewhat exceptionally prominent by the facts of this case. Here are two counterfeit "compound-interest treasury notes," nearly a quarter of a century old, which have lain in "the chest"—as she expressed it—of an old colored woman for nearly that length of time, having been brought home "after the surrender," by her husband, "from the war." The genuine, as the witnesses say, have been long since withdrawn from circulation, and none has been seen by any of the experts for eight or ten years. The truth is, they have been quite forgotten as a part of the circulation, or as ever having had any existence at all. It does seem to me that under such circumstances. an allegation in some form of their existence formerly would have been best, although I have no doubt the indictment is good, technically, without it. It follows substantially the precedents. Whart. Prec. Ind. Nos. 312, 315; Bish. Dir. & Forms, §§ 331 et seq., 453 et seq. Motion overruled.