UNITED STATES v. SMITH.

(District Court, W. D. Kentucky. March 26, 1907.)

1. BANKS—MISAPPLICATION OF FUNDS BY NATIONAL BANK OFFICER—STATUTE CONSTRUED.

In Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], which makes it a criminal offense for any officer or agent of a national bank to embezzle, abstract, or willfully misapply "any of the moneys, funds, or credits of the association," the word "moneys" refers to the currency or circulating medium of the country, the word "funds" refers to government, state, county, municipal, or other bonds, and to other forms of obligations and securities in which investments may be made, and the word "credits" refers to notes and bills payable to the bank, and to other forms of direct promises to pay money to it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 964.]

2. SAME—SUFFICIENCY OF INDICTMENT—DESCRIPTION OF OFFENSE.

An indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging that defendant, as president of a national bank, willfully misapplied a certain sum of the "funds and credits" of the bank by discounting the note of a person known to be insolvent, the proceeds of which were divided between such person and defendant, is insufficient in its description of the offense, where it does not use the word "moneys," nor in any way describe the funds or credits charged to have been so misapplied.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 673.]

3. SAME—DUPLICITY.

An indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], is bad, both for duplicity and for insufficient description of the offense,

where it charges the embezzlement, as well as the misapplication, of the "funds and credits" of a national bank by defendant as president, without setting forth any particular description of either, and without any separate statement as to the amount, either of "funds" or of "credits," so embezzled or misapplied.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 973.]

4. SAME.

An indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging an officer of a national bank with the willful misapplication of its "money, funds, and credits," must contain a particular description of the funds and of the credits charged to have been so misapplied, and show how much there was of money and of funds and of credits separately.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 973.]

5. SAME.

An indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging the defendant, as president and director, with having willfully misapplied certain credits of the bank, "by procuring the authority of the board of directors  *  *  *  to an acceptance of an assignment" of an interest in a partnership in satisfaction of an indebtedness due the bank, and charging the amount of such indebtedness to the account of stocks and bonds, knowing that the assignor had in fact no interest in such partnership, does not state an offense under the statute, since what was done appears to have been by authority of the board of directors, and the facts set out do not show a misapplication of credits by defendant, nor is it averred that such misapplication was made to his own use, benefit, or gain, nor to that of any person other than the bank.

On Demurrer to Indictment.

George Du Relle, U. S. Atty.
Wm. M. Smith, for defendant.

EVANS, District Judge.   Section 5209 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3497] is as follows:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

The indictment in this case is based on the provisions of this section, and embraces eleven counts. The defendant has demurred to each of them. The first six counts cover that many false entries charged to have been made or caused to have been made by the defendant on the books of the Western National Bank of Louisville, while he was employed as its president, each with the intent to injure or defraud the bank or certain of its customers, and with the further intent to deceive its officers and any agent appointed to examine its

affairs. A careful examination of these counts leaves no doubt upon the mind of the court that each of them is sufficient, and the demurrer to them will be overruled. United States v. Britton, 107 U. S. 662, 2 Sup. Ct. 512, 27 L. Ed. 520.

The remaining five counts, however, require us to ascertain, if possible, the proper signification of the words "moneys, funds and credits" used in the statute, and this, in some respects, is not without difficulty. The word "money" is doubtless equivalent to "currency," and its meaning is apparent. But Congress could not have intended that the word "funds" or the word "credits" should be construed to mean the same thing as the word "money," or its equivalent, "currency," or that the word "funds" should be regarded as synonymous with the word "credits." The three words do not mean, and evidently were not expected to be construed as meaning, the same thing, as mere tautology was not designed. As used in the financial world, and, indeed, in ordinary affairs, the word "funds" means something less flexible than "currency." When we speak of funding an indebtedness, we understand that it is to be put into a more permanent form. In England "the funds" are considered to be the government's bonded indebtedness, and not its mere currency or money; and so it is also in the United States. At any rate, a careful consideration induces the court to agree with Judge Priest, in his opinion in the case of United States v. Greve (D. C.) 65 Fed. 489, that the word "funds" has a different meaning from the word "moneys" as used in the statute. In the opinion of the court the word refers to forms of somewhat permanent indebtedness and to a class of securities in which permanent investments are likely to be made.

The remaining word, "credits," refers to something nearer to the bank's daily business transactions, and should be given a different meaning from that of either of its associate words. We have not found in any of the dictionaries or encyclopedias to which we have access the word "credits" in the plural form as used in the statute, nor have we found anywhere any precise definition of it as used in section 5209; but in many cases noted under the word in 2 Words and Phrases, p. 1728 et seq., we find it construed as used in the revenue laws of the states, and those cases have been instructive. Certainly, as used in section 5209, it does not mean something which is merely the opposite of the word "debit," commonly used in bookkeeping. But, without further enlarging upon the reasons for doing so, the court has reached the conclusion that the word "credits," used in the statute, means debts due the bank or promises to it to pay money, namely, such as its notes and bills receivable, as distinguished from more permanent investment securities, like government or other bonds, not payable to the bank, and not evidencing an indebtedness created by its loans to customers. Stated shortly, the court is of opinion that the word "money" refers to the currency or circulating medium of the country; that the word "funds" refers to government, state, county, municipal, or other bonds, and to other forms of obligations and securities in which investments may be made; and that the word "credits" refers to notes and bills payable to the bank, and to other

forms of direct promises to pay money to it. This section, in respect to the clause forbidding willful misapplications, was under consideration in the case of United States v. Britton, 107 U. S. 669, 2 Sup. Ct. 512, 27 L. Ed. 520; but the court did not there consider nor determine the meaning of the words "funds and credits" of the bank.

If the conclusions stated approximate accuracy, we are prepared to determine the questions arising upon the demurrer to each of the remaining counts in the indictment.

The seventh count charges that the defendant willfully misapplied $2,930.60 of the "funds and credits" of the bank with the various intents denounced by the statute. It is charged that this was done by the defendant, while acting as president of the bank, by discounting the note of one Toof for $3,000, the net proceeds of which Toof, who alone gave the note and who was at the time known by the defendant to be insolvent, divided between himself and the defendant. The word "money" is not mentioned in this count, and there is no description either of the "funds" or of the "credits" so charged to have been misapplied. If the word "money" alone had been used, it is difficult to see how there could have been any difficulty about the question; but that word was not used at all, and if the court has correctly ascertained or approximated the proper meaning and signification of the words "funds" and "credits," then there should have been such a particular description of the "funds" and of the "credits" as would have enabled the accused to prepare his defense, and so that the judgment here would bar another prosecution. This result is manifest from the cases of United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, Evans v. United States, 153 U. S. 586, 14 Sup. Ct. 934, 38 L. Ed. 830, and Keck v. United States, 172 U. S. 436, 19 Sup. Ct. 254, 43 L. Ed. 505, and cases cited. In Batchelor v. United States, 156 U. S., at page 429, 15 Sup. Ct., at page 447, 39 L. Ed. 478, the court said:

"By the settled rules of criminal pleading, and by the previous decisions of this court, the words 'willfully misapplies,' having no settled technical meaning (such as the word 'embezzle' has in the statutes, or the words 'steal, take, and carry away' have at common law), do not of themselves fully and clearly set forth every element necessary to constitute the offense intended to be punished: but they must be supplemented by further averments, showing how the misapplication was made and that it was an unlawful one. Without such averments there is no sufficient description of the exact offense with which the defendant is charged, so as to enable him to defend himself against it, or to plead an acquittal or conviction in bar of a future prosecution for the same cause." United States v. Britton, 107 U. S. 655, 661, 669, 2 Sup. Ct. 512, 27 L. Ed. 520; United States v. Northway, 120 U. S. 327, 332, 334, 7 Sup. Ct. 580, 30 L. Ed. 664; Evans v. United States, 153 U. S. 584, 587, 588, 14 Sup. Ct. 934, 38 L. Ed. 830.

The same considerations must control in disposing of the demurrer to the eighth count of the indictment.

The ninth count is open to similar objections, with the additional one of duplicity, as this count charges the embezzlement, as well as the willful misapplication, of the "funds and credits" of the bank, without setting forth any particular description of either, and without any

152 F.—35

separate statement as to the amount either of the "funds" or of the "credits" which had thus been embezzled or misapplied.

The tenth count is equally, if not more, faulty, inasmuch as it charges the willful misapplication of "money, funds, and credits," without any particular description either of the funds or of the credits alleged to have been misapplied, and without showing how much there was of money and of funds and of credits separately.

The eleventh count charges that the defendant, while employed and acting as the president and as director of the bank—

"did of the credits of said association, then intrusted to his custody and under his control as said president and director, unlawfully, knowingly, and willfully misapply the sum of $30,000, then a part of the indebtedness of Edgar D. Martin, M. T. Martin, and E. L. Martin, and standing as a charge against said Edgar D. Martin, M. T. Martin, and E. L. Martin upon the books of said association, and said W. B. Smith did misapply said sum of $30,000 by procuring authority of the board of directors of said association to the acceptance of an assignment of Edgar D. Martin to said W. B. Smith of his (said Edgar D. Martin's) right, title, and interest in and to the firm of Kahn, Martin & Co., of Louisville, Ky., as an asset of the full value of $30,000, and by charging said sum of $30,000 to the account of stocks and bonds, which said assignment was then and there falsely dated May 2, 1905, and was of the tenor following, to wit:

" 'May 2, 1905.

" 'In consideration of $30,000 this day paid to me by W. B. Smith, I herewith sell, assign, transfer, and set over to said W. B. Smith all my right, title, and interest in and to the firm of Kahn, Martin & Co. of Louisville, Ky. This company is now in process of incorporation, and the above interest is represented in the name of E. D. Martin, but as soon as the stock is delivered to E. D. Martin same is to be delivered to said W. B. Smith, having been paid for by him in full. In testimony whereof, witness my signature this May second, 1905.                                    Edgar D. Martin.

" 'Attest: T. E. Shinnick.'

"Whereas, in fact and in truth the said Edgar D. Martin then had no right, title, or interest in or to the firm of Kahn, Martin & Co., or in or to any of the assets or property of said firm, as he (the said W. B. Smith) then very well knew.

"And so the grand jurors aforesaid, upon their oaths aforesaid, present that the said W. B. Smith unlawfully, willfully, and knowingly did fraudulently misapply $30,000 of the credits of said association, with the intent upon the part of said W. B. Smith to injure and defraud said association."

Under the rule laid down in Batchelor v. United States, supra, this count must be held to be insufficient, unless the alleged acts of the defendant amount to a willful misapplication of $30,000 of the indebtedness of the three Martins, within the meaning of the statute. The mere conclusion of the pleader that the defendant misapplied the credits of the bank is not sufficient. The willful misapplication must appear from acts alleged to have been done. No such acts are charged, unless by recital somewhat in the language of the statute. On the contrary, it appears that the application of the credit or indebtedness was made by authority of the board of directors, and consisted of using it to obtain the transfer from Edgar D. Martin. The $30,000 was then charged to the account of stocks and bonds, but whether by order of the directors does not clearly appear. But no act of misapplication, or of any application whatever, is shown of the indebtedness of the Martins, except to obtain the transfer from Edgar

D. Martin. The transfer itself does not show it to have been that credit or indebtedness which was applied by the defendant to the payment of the consideration for the transfer copied into the count, though for this occasion the fair inference may be that it was. But, if so, the defendant was carrying into effect the order of the directors. We need not, on this hearing, consider whether there was any false entry on the account of stocks and bonds, nor whether the defendant had intentionally imposed upon and deceived the board of directors, because neither of those things is charged. And, however those matters may be, this count in the indictment does not show any act of willful misapplication of the "credits" of the bank, assuming that the book indebtedness of the three Martins was such. What was done by the defendant in applying that indebtedness to obtain the transfer, instead of being wrongful, appears to have been done by the authority of the board of directors; and, in the absence of any further showing, that fact, per se, negatives any idea of intent to injure or defraud the bank, which is also an essential element of the offense charged.

But even stronger reasons apply. In the Britton Case it was said (107 U. S. 669, 2 Sup. Ct. 517, 27 L. Ed. 520) that:

"The words 'willfully misapplied' are, so far as we know, new in statutes creating offenses, and they are not used in describing any offense at common law. They have no settled technical meaning, like the word 'embezzled' as used in the statutes, or the words 'steal, take, and carry away,' as used at common law. They do not, therefore, of themselves fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant 'willfully misapplied' the funds of the association. This is well settled by the authorities we have already cited. There must be averments to show how the application was made and that it was an unlawful one."

In Evans v. United States, 153 U. S. 587, 14 Sup. Ct. 934, 38 L. Ed. 830, it was stated that:

"The section in question in this case was before this court in United States v. Britton, 107 U. S. 655, 669, 2 Sup. Ct. 517, 522, 27 L. Ed. 520, in which the willful misapplication made an offense by this statute was defined to be 'a misapplication for the use, benefit, or gain of the party charged or of some company or person other than the association,' and that to constitute such an offense there must be a conversion to the use of the offender, or of some one else, of the moneys or funds of the association by the party charged."

Tested by these rules, and especially the last, this count in the indictment must be regarded as wholly insufficient, inasmuch as it is nowhere averred that the defendant misapplied the credits of the bank to his own use, benefit, or gain, nor to that of any person other than the bank.

It results that the demurrer must be sustained to the seventh, eighth, ninth, tenth, and eleventh counts in the indictment, and overruled as to the first, second, third, fourth, fifth, and sixth counts thereof.