## LEWIS et al. v. UNITED STATES.*

Circuit Court of Appeals, Eighth Circuit.
November 28, 1927.

No. 7492.

1. Courts ⬥419—Original Eastern and Western districts of Oklahoma were continued for trial and punishment of crimes committed prior to enactment of statute creating three new districts (Jud. Code, § 59 [28 USCA § 121]; 28 USCA § 182).

Under Judicial Code, § 59 (28 USCA § 121 [Comp. St. § 1041]), and Act Feb. 16, 1925, § 1 (28 USCA § 182 [Comp. St. § 1088]), creating three new districts in Oklahoma, original Eastern and Western districts were continued for trial and punishment of offenses committed prior thereto, there being no application for transfer.

2. Jury ⬥33(3)—Defendants held not entitled to have jurors selected from counties transferred to another district created after crime was committed.

Jurors must be selected from citizens and residents of district in which case is to be tried, and defendants were not entitled to have jurors selected from counties transferred to another district created after crime was committed.

3. Banks and banking ⬥256(1)—Minute book is "book," and minutes of board meetings are "entry," within statute prohibiting false and fraudulent entry in books of banking association (12 USCA § 592).

Minute book of bank held to be "book," within Rev. St. § 5209 (12 USCA § 592), relative to offense of making false entries in books of banking association with intent to defraud, since such statute covers all books, entries in which are calculated to deceive Comptroller of Currency and officers of bank, and minutes of meetings, showing that committee had passed on loans, was "entry," within such section.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Book; Enter—Entry (in Practice).]

4. Banks and banking ⬥256(1)—President and vice president of bank having control and management are responsible for false reports to Comptroller of Treasury, regardless of whether sent by their explicit direction (12 USCA § 592).

President and vice president of bank are responsible for reports to Comptroller of Currency, sent and caused to be sent by them, with their knowledge, in prosecution under Rev. St. § 5209 (12 USCA § 592), for making such a report with intent to defraud, regardless of whether reports were sent by their explicit direction in each case, where they had control and management of bank.

5. Banks and banking ⬥257(3)—In prosecution of bank officers for false entries, evidence showing execution of notes for their accommodation, under agreement that maker should not be liable, held admissible (12 USCA § 592).

In prosecution, under Rev. St. § 5209 (12 USCA § 592), brought against president and vice president of bank for making false entries and reports, evidence that notes were executed

*Rehearing denied January 17, 1928.

for accommodation of defendants under agreement that makers would not be liable thereon held admissible, as bearing on intent of defendants, especially where some of notes were specifically mentioned in indictment.

6. Indictment and information ⬥71—Indictment for false entries in bank's minute book held to state tenor of entries with sufficient particularity as against demurrer (12 USCA § 592).

In prosecution, under Rev. St. § 5209 (12 USCA § 592), against bank officers for making false entries in minute book, indictment describing false entries by specifying by number the notes, which were the basis of the alleged fraudulent misappropriations, as having been approved by discount committee and board of directors, held, as against demurrer, to set out tenor of entries with sufficient particularity, especially in absence of request for bill of particulars.

7. Criminal law ⬥1167(2)—Where sentences ran concurrently after conviction on several counts, insufficiency of some of counts was immaterial.

Where indictment, in prosecution under Rev. St. § 5209 (12 USCA § 592), for making false and fraudulent entries in minute book of bank, charged such offense in 37 counts, and sentences ran concurrently for conviction on 33 of such counts, failure of one or more of such counts to state charge with requisite particularity held immaterial, where description was sufficient in one.

8. Criminal law ⬥829(1)—Refusal of instructions covered by instructions given held not error.

Refusal to give certain requested instructions is not error, where such instructions were fully covered by court in its charge.

In Error to the District Court of the United States for the Eastern District of Oklahoma; John C. Pollock, Judge.

Allie E. Lewis and another were convicted of violating the National Banking Act (13 Stat. 99), and they bring error. Affirmed.

See, also, 14 F.(2d) 369.

R. L. Davidson, of Tulsa, Okl. (W. I. Williams, of Tulsa, Okl., on the brief), for plaintiffs in error.

Nugent Dodds, Sp. Asst. Atty. Gen., and Frank Lee, U. S. Atty., of Muskogee, Okl. (John M. Goldesberry, Sp. Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. Plaintiffs in error, Allie E. Lewis and William Lloyd Lewis, were indicted in the United States District Court for the Eastern District of Oklahoma at Muskogee, June 23, 1925. The indictment contains 40 counts. The first 37 charge plaintiffs in error with making false

entries in a certain minute book of the Liberty National Bank with intent to injure and defraud said bank and divers other persons, companies, and corporations, and with intent to deceive the other officers of said bank, the Comptroller of the Currency, and the agents and examiners appointed under the laws of the United States to examine into the affairs of the bank. The last three counts charge plaintiffs in error with making false entries in three different reports of said bank to the Comptroller of the Currency, which reports purported to show the financial condition of said bank at the close of business on certain dates. They allege that these false reports were made with intent to 'deceive the Comptroller of the Currency and the agents and examiners appointed under the laws of the United States to examine into the affairs of said bank. Plaintiffs in error were respectively the president and vice president of the Liberty National Bank at all times mentioned in the indictment, and as such exercised practically complete control of its affairs. The board of directors appears to have been selected by them, held no meetings, and exercised no supervision over the institution. The charge was that plaintiffs in error obtained for their personal use several hundred thousand dollars of the money of the bank by procuring third parties to execute notes, the proceeds of which came to and were used by plaintiffs in error; that many of these notes were wholly worthless, and the bank was rendered insolvent. Subsequently the Liberty National Bank was merged with the Security National Bank of Tulsa, and thereafter the stockholders of the latter bank were assessed approximately $600,000 because of worthless paper taken over from the Liberty National Bank.

It is further charged that, in order to deceive the bank examiners and to convey the impression that the notes, to which reference has been made, had been examined by the discount committee, and approved by the board of directors, plaintiffs in error caused pretended minutes of purported meetings of the board to be written up and signed. In such minutes pretended reports of a discount committee, and approval of such reports by the board, were recited. These minutes were prepared under the express direction of plaintiff in error William Lloyd Lewis, and were signed by the president. As matter of fact, the bank had no acting discount committee, and held no meetings of the board of directors at the times and for the purposes stated in these minutes. Both defendants were found guilty upon all counts of the indictment, except the twenty-first, thirty-first, thirty-fifth, and thirty-seventh. Upon the first count of the indictment each defendant was sentenced to pay a fine of $5,000 and costs of prosecution, and to be imprisoned in the United States penitentiary at Leavenworth, Kan., for a period of five years, and on each of the remaining 35 counts to be imprisoned for a period of five years in said penitentiary; the sentences on said last 35 counts to run concurrently with each other and with the sentence imposed on count one. The assignments of error contain 287 specifications. The errors relied upon are those epitomized by counsel:

(1) The grand jury was illegal and void, and did not have the power or authority to find and return the indictment.

(2) The United States District Court for the new Eastern District of Oklahoma was without jurisdiction to try the defendants on this indictment.

(3) The petit jury was an illegal jury, because it was not drawn, selected, and impaneled by law.

(4) Judge Kennamer was without power or authority to pass on the motion to quash the motions to dismiss and the demurrer to the indictment.

(5) Each count of the indictment fails to state facts sufficient to constitute a public offense.

(6) The false entry charge was not set out in hæc verba or by its tenor.

(7) The evidence is insufficient to sustain the verdicts.

And, incidentally thereto, that neither defendant made, or directed to be made, the entries charged in the reports to the Comptroller; that the minute book of the bank, not being an account book, does not come within the meaning of the word "book," as used in section 5209, Revised Statutes (12 USCA § 592), and that minutes of the meetings of the board of directors and stockholders are not entries within the meaning of the word "entry" as used in said section; that incompetent evidence was introduced at the trial, and that the court erred in refusing certain instructions requested by plaintiffs in error.

There were originally two judicial districts in the state of Oklahoma—the Eastern and Western. The judges of the Eastern district were Hon. R. L. Williams and Hon. F. E. Kennamer. Upon their failure to agree upon the division of business and the assignment of cases for trial in their district, the senior Circuit Judge of the circuit made an order dividing the district into two divisions. The First division included the following places

at· which the District Court was held, to wit: Vinita, Muskogee, McAlester, and Hugo, and the counties tributary thereto. The Second division included the following places of holding court, to wit: Tulsa, Ada, Ardmore, and Chickasha, and the counties tributary thereto. The order provided for the division of business and the assignment of cases for trial in the district as follows:

"It is further ordered that all the judicial business of this court, and of the judges thereof as such, now pending, except as to questions or issues which have been submitted to one of the judges for decision, and all the judicial business that shall arise in or come from the territory in the First division on and after the date of this order be, and it is hereby, exclusively assigned to Hon. R. L. Williams. And, because the offices and records of the United States marshal and the United States district attorney are at Muskogee, and it has been the practice to hold the sessions of the grand jury for the entire district at Muskogee, the judicial business for the entire district of convening and presiding over the grand jury and of directing its course, of receiving informations, indictments and pleas of guilty, and pronouncing sentences on pleas of guilty, and of arraigning defendants, taking their pleas, and allowing bail before hearing or trial, is assigned to Hon. R. L. Williams. But the argument of law questions and the trial of criminal cases on motions, demurrers, and pleas shall be had in the division in which the offense is charged to have been committed, and before the judge to whom the judicial work of that division is generally assigned.

"It is further ordered that, except as to the portion of the judicial business in the Second division relating to the grand jury, the filing of informations, the arraigning of defendants, the taking of pleas of guilty, pronouncing sentences thereon, etc., assigned to Hon. R. L. Williams in the preceding paragraph, all the judicial business of this court and of the judges thereof as such, now pending, except as to questions or issues which have been submitted to one of the judges for decision, and all the judicial business that shall arise or come from· the territory in the Second division on and after· the date of this order is hereby exclusively assigned to Hon. F. E. Kennamer.

"It is further ordered that, unless and until otherwise ordered by the judge to whom the judicial work of the division in which any county is situated, the cases and issues arising in or coming from such county shall be and hereby are assigned for hearing and trial to the court town to which such county is heretofore in this order declared tributary."

An act of Congress, approved February 16, 1925, by section 1 (28 USCA § 182 [Comp. St. § 1088]), created three independent districts in the state of Oklahoma, designated as the Eastern, Western, and Northern. The said newly created Northern district comprises ten counties which were formerly a part of the old Eastern district and two counties which were formerly a part of the old Western district. The new Eastern district comprises the remaining counties of the old Eastern district, and the new Western district comprises the remaining counties of the old Western district. Muskogee and Ardmore remain in the Eastern district, and Tulsa county, in which lies the city of Tulsa, is in the Northern district. It will thus be seen that the Northern district was formed by the transfer of ten counties from the Eastern district and two counties from the Western district. In other respects the Eastern and Western districts remain as before.

Act Feb. 16, 1925, § 2, contained the following provisions:

"The present senior judge of the Eastern district of Oklahoma be, and he is hereby, assigned to hold said court in the said Eastern district, and shall exercise the same jurisdiction and perform the same duties within the said district as he exercised and performed within his district prior to the passage of this act. That the present judge of the Western district of Oklahoma be, and he is hereby, assigned to hold said court in the Western district of Oklahoma, and shall exercise the same jurisdiction and perform the same duties as he exercised and performed within his district prior to the passage of this act. That the present junior judge of the Eastern district of ·Oklahoma be, and he is, hereby, assigned to hold said court in the said Northern district, and shall exercise the same jurisdiction and perform the same duties within the said district as he exercised and performed within his district prior to the passage of this act." Comp. St. § 1088a.

"Jurisdiction and authority of the courts and officers of the Western district of Oklahoma, and of the courts and officers of the Eastern district of Oklahoma as heretofore divided between them by the order of the senior judge of the Circuit Court of Appeals for the Eighth Circuit of the United States over the territory embraced within said Northern district of Oklahoma shall continue as heretofore until the organization of the District Court of said Northern District, and thereupon shall cease and determine, save and

except in so far as the authority of the junior judge of said Eastern district is continued in him as judge of said Northern district, and save and except as to the authority expressly conferred by law on said courts, judges or officers, or any of them, to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of the said Northern district, and save and except as to any other authority expressly reserved to them or any of them under any law applicable in the case of the creation or change of the divisions or districts of District Courts of the United States." Comp. St. § 1088d.

This act of Congress took effect on the date of its approval, and the District Court for the Northern District of Oklahoma was organized April 1, 1925. The authority expressly reserved by the language just quoted is to be found in section 59 of the Judicial Code (28 USCA § 121 [Comp. St. § 1041]), which, so far as applicable, reads as follows:

"Whenever any new district or division has been or shall be established, or any county or territory has been or shall be transferred from one district or division to another district or division, prosecutions for crimes and offenses committed within such district, division, county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district or division had not been created, or such county or territory had not been transferred, unless the court, upon the application of the defendant, shall order the cause to be removed to the new district or division for trial."

As has been stated, the indictment was returned at Muskogee, in the Eastern district of Oklahoma, June 23, 1925. This was some time after the act of Congress establishing in Oklahoma the three districts, Eastern, Western, and Northern, to which reference has been made, and after the organization of the District Court of said Northern District. The senior Circuit Judge thereupon assigned Judge Kennamer, as judge of the Northern district, to assist in holding the District Court of the United States in and for the several divisions of the Eastern district of Oklahoma. August 5, 1925, the defendants filed an affidavit of prejudice against Judge Kennamer and moved for an order of disqualification, and an authenticated copy thereof to be certified to the senior Circuit Judge of the circuit. This motion was overruled, the case proceeded to trial before Judge Kennamer, and resulted in a judgment of conviction. This judgment was reversed and remanded

by this court, upon the ground that the trial judge erred in refusing to disqualify himself upon the application made. Lewis et al. v. United States (C. C. A.) 14 F.(2d) 369.

Thereafter Judge Pollock was designated, under the provisions of the Judicial Code. The case was tried at Ardmore, in the Eastern district. From the judgment of conviction resulting the case comes again to this court on error. At the trial exceptions of the defendants to the jurisdiction of the court and to the legality of the juries, grand and petit, were duly preserved.

At the hearing counsel for plaintiffs in error abandoned their contention that the appointment of Judge Kennamer to sit in the Eastern district of Oklahoma was without authority, and that he had no power to pass upon the motion to quash the indictment, the motions to dismiss, and the demurrer for that reason; but it is still insisted that the action of the court in overruling these motions and this demurrer was wrong. In addition to the contention that the indictment fails to charge a public offense, it is claimed that, because the offenses are alleged to have been committed before the change in the districts and their boundaries was made, plaintiffs in error can legally be tried only in the old Eastern district, as originally constituted, including the ten counties transferred by the Act of February 16, 1925, to the Northern district; that neither grand nor petit jury was legally drawn, because these ten counties were not included in the drawings; and, finally, that under the division order of the senior Circuit Judge above set out, plaintiffs in error should have been tried in the Second division of the old Eastern district, at Tulsa, the place to which the judicial business of the county in which the offenses are charged to have been committed was made tributary by that division order.

[1, 2] With respect to the jurisdiction of the court and the drawing of the juries, the rule was announced by this court when this case was heard before on writ of error. These same points in substance were urged and were resolved against plaintiffs in error. 14 F.(2d) 369. We adopt the reasoning of the opinion in that case without quotation therefrom.

We hold that section 59 of the Judicial Code, hereinabove set out, has express application here, in that it provides for a trial in the district from which counties have been transferred in the same manner as if such counties had not been transferred, unless upon application of the defendant the court shall order the cause to be removed to the

new district for trial, provided, of course, that the offense was committed in one of the counties so transferred to the new district. Upon the organization of the Northern district of Oklahoma the divisional order of the senior Circuit Judge ceased and terminated except in so far as the authority of the junior judge of the Eastern district was continued in him as judge of said Northern district, and except as to the authority expressly conferred by law on said courts, judges or officers, or any of them, to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of the said Northern district. This conferred upon plaintiffs in error the right to have this case tried at Tulsa, in the present Northern district, if, upon their application, the court should order the cause to be removed to the Northern district for trial. In our judgment, this limits the application of the divisional order after the organization of the District Court in said Northern district. Authority was conferred upon the District Court of the Eastern District—that district having had jurisdiction of the offense when committed—to try the case in the absence of application for such transfer. No such application was made. Counsel for plaintiffs in error were asked by the trial court if it was their purpose to claim their right to try the case in the Northern district. They answered that it was not their purpose so to do.

In addition to the reasoning in Lewis et al. v. United States, supra, these suggestions may be added. The judge of the Eastern district, before the passage of the Act of February 16, 1925, by general order directed the names of jurors from the ten transferred counties to be removed from the jury boxes for the Eastern district, thereby in effect restricting the drawing of jurors to the counties remaining in the district. A practical interpretation of the act of Congress contemplated the continuance of the Eastern district of Oklahoma, not as a stranger to the former district, but with new boundaries, after the analogy of the transfer of a county or counties from districts in other cases. This district was previously ascertained by law just as in the case of a district from which counties are transferred, and, in order that the constitutional rights of defendants, respecting venue, might strictly be preserved, jurisdiction was expressly retained in that part of the district, in which an offense was committed, upon application of a defendant. In the absence of such application, the court of the Eastern district could proceed as in other cases within its jurisdiction. In this act of Congress, and the procedure under it, in the instant case, certainly the spirit, and we think the letter, of the fundamental law was preserved.

[3, 4] The objection to the sufficiency of the evidence is twofold: First, that minute books are not books as contemplated by the statute; and, second, that the reports to the Comptroller of the Currency were not made by the defendants. We think the statute broadly covers all books, entries in which are calculated to deceive the Comptroller of the Currency and the officers of the bank. These minute books were most important under the circumstances of this case. Had they not disclosed that these loans, amounting to hundreds of thousands of dollars, had been passed on by the proper committee of the directors, those loans conceivably would have been investigated and challenged. The result was that the funds of the bank were misappropriated by plaintiffs in error through the instrumentality of deceptive entries in books of the bank. It is true that in a number of cases cited it has been taken for granted that the entries referred to in the statute are entries in books of account, strictly so called. Such, of course, are the usual entries that come before the courts, but no decision has either expressly, or by necessary implication, confined the application of the statute to such books of account. The word "entry," by common usage, is not so limited. Any notation in a book of the bank, calculated and intended to give information concerning matters affecting its financial integrity and the soundness of its business methods, must come within the scope of the comprehensive language employed in the statute. As to the reports made to the Comptroller, it is sufficiently shown that they were sent and caused to be sent by the defendants, and with their knowledge, whether by explicit direction in each case is immaterial. Morse v. United States (C. C. A. 2) 174 F. 539, 20 Ann. Cas. 938. As to the responsibility of officers having control and management, see opinion of this court in Cooper v. United States (C. C. A.) 9 F.(2d) 216–222.

[5] The alleged incompetent evidence referred to in the assignment of errors consisted of certain notes made for the accommodation of the defendants under an agreement that the makers would not be liable thereon and never be called upon to pay the same. Some of the notes specified are specifically mentioned in counts of the indictment, but all bore upon the intent of the defendants, and were competent for that reason.

[6] It is urged that in charging the making of a false entry it is necessary to set out the entry in hæc verba, or by its tenor, or allege a good and sufficient reason for not so doing. Count 1 of the indictment may be taken as typical:

"The grand jurors of the United States of America, impaneled and sworn in the District Court of the United States for the Eastern District of Oklahoma, at the special March term of said court, at Muskogee, in the year 1925, and inquiring for said district, upon their oath present, that Allie E. Lewis and William Lloyd Lewis, each late of the city of Tulsa, Oklahoma, were, on March 20, 1923, at said city of Tulsa, in said district, and within the jurisdiction of this court, then and there respectively directors and officers, to wit, the said Allie E. Lewis was the president, and the said William Lloyd Lewis was a vice president, of a certain national banking association theretofore organized and established, and then and there existing and in operation and doing business as, and under the name the Liberty National Bank of Tulsa, under and by virtue of the laws of the United States concerning national banks, and which said bank was then and there a member bank of the Federal Reserve Bank of Kansas City, Missouri, as designated by the Reserve Bank organization committee, to wit, in Federal Reserve district No. 10; said Allie E. Lewis and said William Lloyd Lewis each being then and there actively engaged in the management of the business and affairs of said association by virtue of their official relation thereto as such president and vice president, respectively, thereof, and as such officers of said association possessing a power of control, direction, and management over the moneys, funds, credits, books, reports, records and statements of said association, by virtue of their said official relationship to said association, and their respective power of control, direction and management over the moneys, funds, credits, books, reports, records, and statements thereof unlawfully, feloniously, knowingly, wrongfully, and willfully, with intent on their part, and on the part of each of them, to injure and defraud said banking association, and divers other persons, companies, and corporations to the grand jurors unknown, and to deceive the other officers of said member bank, the Comptroller of the Currency of the United States, and the agents and examiners appointed under the laws of the United States to examine the affairs of said banking association, did make and cause to be made, in a certain record book of said banking association then and there used by said association in the regular course of its banking business, for the purpose of recording therein the minutes of the meetings of its board of directors, and the minutes of the meetings of its stockholders, and then and there known and designated as, to wit, Minute Book No. 2, on, to wit, the aforesaid 20th day of March, 1923, a certain false entry on that certain page of said minute book numbered 23 which said entry then and there was, and is, false, and which said entry they, the said Allie E. Lewis and William Lloyd Lewis, each then and there well knew to be false, to wit, an entry which then and there falsely purported to show, and which then and there did in substance and effect falsely declare, that the board of directors of said association, at a meeting of said board of directors held on, to wit, March 20, 1923, approved a report of the discount committee of said association on all loans made by said association subsequent to February 27, 1923, and prior to said 20th day of March, 1923, being loans numbered 17086 to 18050, inclusive, in the books and records of said bank; whereas, in truth and in fact no such report was approved by said board of directors, who did not then or at any time prior or subsequent thereto, at any meeting of the board of directors of said association, approve a report of such discount committee as to the said loans so numbered 17086 to 18050, inclusive, as aforesaid, all of which said Allie E. Lewis and said William Lloyd Lewis each then and there well knew, contrary to the form of the statute of the United States in such case made and provided, and against the peace and dignity of the United States."

[7] This description of the false entry specified by number the notes that were the basis of defendants' alleged fraudulent misappropriations as having been approved by the discount committee and the board of directors. An examination of the various counts of the indictment convinces that the tenor of the entries are set out with sufficient particularity and the pleading in that respect is good as against demurrer and certainly in the absence of request for a bill of particulars. In some counts the description may be less full than in others, but inasmuch as the sentences run concurrently a failure in any one or more of the counts to set forth the charge with requisite particularity, which is not conceded, becomes immaterial.

The contention that the indictment fails to state facts sufficient to constitute a public offense is founded both upon the alleged failure to set out the false entries with sufficient

particularity and upon the insistence that minute books are not books susceptible of false entries within the meaning of the statute. Both contentions are ruled against plaintiffs in error.

[8] With respect to the refusal of the court to give certain instructions requested by counsel for plaintiffs in error, an inspection of the record discloses that the instructions asked were either fully covered by the court in its charge or contained vices which would necessarily lead to their rejection. The charge of the court fully covered the law of the case.

We have given careful and patient consideration to all points raised in brief and argument. We are unable to find in them error calling for reversal.

The judgment accordingly is affirmed.