## HAMPTON et al. v. WILLIAMS et al.

Circuit Court of Appeals, Eighth Circuit.
May 22, 1929.

No. 352.

Joseph W. Howell, of Tulsa, Okl., for petitioners.

William M. Matthews, of Kansas City, Mo., for respondents.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge. This is an original proceeding in this court seeking orders of prohibition against the judge of the Eastern District of Oklahoma and against a special master, appointed by him, prohibiting them from exercising further jurisdiction in the case of Georgia Valliere Hampton et al. v. Sidney T. Ewert et al., and also an order of mandamus against the clerk of that court to require him to transfer the record and papers in said case to the clerk of the District Court for the Northern District of Oklahoma.

The petition alleges that the above case is a civil action concerning mining leases on land; that such land was within the Eastern district when the action was commenced (September 17, 1923) and within the Northern District as subsequently created (Act of February 16, 1925, 43 Stat. 945); that there was a final hearing thereon before Judge Williams, a judge of the Eastern District, which hearing was and the case submitted during March 1925, resulting in a memorandum opinion rendered November 20, 1925, upon which a final decree, favoring defendants, was entered December 1, 1925; that appeal was taken to this court resulting in reversal and remand for proceedings in accordance with the opinion of this court (Hampton v. Ewert, 22 F.(2d) 81); that petitions for rehearing were subsequently filed in this court and denied; that petitions for certiorari were filed in the Supreme Court and denied (276 U. S. 623, 48 S. Ct. 303, 72 L. Ed. 737); that thereafter, the mandate from this court was spread upon the records of the District Court for the Eastern District on April 4, 1928; that, on June 22, 1928, these petitioners (plaintiffs in the above case) filed with the clerk of the Eastern District (one of these respondents) a notice that they desired and requested the transfer of such case to the Northern District, at the same time depositing with said clerk their check to cover costs of such transfer; that, thereafter (June 25, 1928), said clerk informed petitioners that an order of transfer would be necessary and, assuming petitioners would file a motion for such purpose, he (the clerk) had placed such motion on the next motion docket for July 6, 1928; that petitioners (on July 6, 1928) informed the clerk that they had not filed such motion as they deemed the notice sufficient to operate as a transfer of the case; that, with full knowledge that petitioners deemed the notice sufficient and had not and did not intend to file any motion for an order of transfer, the clerk wrote petitioners (on Saturday, July 7, 1928) that he thought such order necessary and (on Monday, July 9, 1928) presented the motion docket to Judge Williams

who proceeded as if such motion had been filed and denied same for want of prosecution; that, thereafter (July 9, 1928), Judge Williams appointed Malcolm E. Rosser (respondent herein) as special master to take an accounting in said case and to report his findings and conclusions by October 20, 1928; that the filing of the above notice was sufficient (section 6, Act Feb. 16, 1925, 43 Stat. 945, 946) without more to operate as a transfer of the case to the Northern District, requiring only transmission of the record and papers by the clerk of the Eastern District to the clerk of the Northern District and ending, upon the filing thereof, all jurisdiction of the court of the Eastern District to proceed further therein. It is to prevent such further proceeding by that court and by the special master that the writ of prohibition is sought and it is to compel such transmission of record and papers by the clerk that the writ of mandamus is asked.

Separate response has been filed by each of the respondents—that of respondent Rosser being an adoption of the response of Judge Williams. It is unnecessary to set forth or even summarize the responses. Such matters therein as are material to the determination of this action will be stated hereinafter in connection with discussion of the issues raised here.

While the issues are argued under several headings, they may be regarded as presenting two matters: First, the propriety of the remedy of prohibition; and, second, whether the right of transfer given by the statute (section 6, Act Feb. 16, 1925, 43 Stat. 945, 946) can be and has been waived by the petitioners.

I. Whether prohibition is a proper remedy depends upon whether a question of jurisdiction is involved. This involves the construction of section 6 of the Act of Feb. 16, 1925 (43 Stat. 945, 946). Before this act, Oklahoma had been divided into the Eastern and Western Districts. This act created the Northern District to consist of certain named counties in the Eastern and in the Western Districts. Section 6 thereof provides for the transfer, from the Eastern and Western Districts to the Northern District, of civil cases pending at the time of the organization of the Northern District. It is as follows (section 6, 43 Stat. 946):

"Sec. 6. Any party to any civil action, suit, or proceeding, including proceedings in bankruptcy, which is pending in the said eastern or western district and the prescribed venue of which would have been in said northern district had such district been constituted at the time such action, suit, or proceeding was instituted, may, by filing notice of such desire in the office of the clerk of such eastern or western district as the case may be, cause such action, suit, or proceeding to be transferred to said northern district, and upon the filing of such notice the cause shall proceed in the said northern district as though originally brought therein. The clerk in whose office such notice may be filed shall forthwith transmit all the papers and documents in his court pertaining to such cause to the clerk of said northern district and he shall also, with all reasonable dispatch, prepare and transmit to such last-named clerk a certified transcript of the record of all orders, interlocutory decrees or other entries in such cause, with his certificate under the seal of the court that the papers sent are all that were on file in said court belonging to the cause. For the performance of his duties under this section the clerk so transmitting and certifying such papers and records shall receive the same fees as are now allowed by law for similar services to be taxed in the bill of costs and regularly collected with the other costs in the cause; and such transcript, when so certified and received, shall henceforth constitute a part of the record in the cause in the court to which the transfer shall be made. With such transcript shall be remitted all deposits in the hands of the clerk to the credit or account of such cause. The clerk receiving such transcript and original papers shall file the same. In case the permissible prescribed venue of any such action, suit, or proceeding would, at the option of the plaintiff, have been in either the said eastern district or in the said western district, though said northern district had then been constituted, then such suit, action, or proceeding shall not be removed to said northern district except upon consent of all of the parties thereto which consent shall be filed with the clerk in lieu of the notice of transfer above specified and shall have the same effect."

Respondents contend that transfer under this section is a question only of venue and not of jurisdiction. A question of venue may ripen into one of jurisdiction. If a controlling statute provides that upon the occurrence or doing of certain things the venue in one court shall cease and that of another shall begin, such happening or performance takes jurisdiction away from the one court and lodges it in the other to the extent contemplated by the statute and any attempt by either court to act therein beyond such limits is in excess of its existing jurisdiction and *may* be prevented by the writ of prohibition.

Section 6 recognized the jurisdiction of the Eastern and Western Districts over civil actions pending at the time the Northern District might be organized. It prescribed the method for transferring to the Northern District such of them as might have been originally brought in the Northern District had that District existed when such actions were commenced. The present action is of that character. Not only is the method clearly stated in the statute, but, also, the effect intended thereby. The method is "by filing notice of such desire [to transfer] in the office of the clerk of such eastern or western district." The effect of such filing is to "cause such action, suit, or proceeding to be transferred to said northern district, and upon the filing of such notice the cause shall proceed in the said northern district as though originally brought therein." To assure this effect, it is required that the clerk of the district where the notice is filed "shall forthwith transmit all the papers and documents in his court pertaining to such cause to the clerk of said northern district and he shall, also, with all reasonable dispatch, prepare and transmit to such last-named clerk a certified transcript of the record of all orders, interlocutory decrees or other entries in such cause. * * *" This quoted language leaves room for no doubt that the bare filing of a proper notice was all that was required by the statute to transfer jurisdiction of the case to the Northern District and to terminate the jurisdiction of the other district unless such right of transfer were subject to waiver and had been waived and such waiver insisted upon by the other party.

■ II. Respondents insist that the right to transfer was waived by petitioners and set up allegations of fact, in their responses, which they urge as constituting waiver. This necessitates determination of whether the right can be waived and, if it can, whether it was by petitioners.

We think it can be waived. Such a suit was, when filed, within the jurisdiction of the eastern district. The *passage* of the act creating the Northern District affected this jurisdiction in no way. That act went no further than to give to any party to such a suit the right to transfer. If no party desired to exercise such right, the cause proceeded as though the act had not been passed. The right of transfer thus given was a privilege. As such, it might be waived and thereby lost. The right to transfer, in all such cases, came into existence when the Northern District was organized, which was April 1, 1925 (Lewis v. United States [C. C. A.] 22 F.(2d) 760,

763). There is no requirement, express or implied, in the statute that such right should be exercised within any period thereafter or even promptly thereafter. The right continued to exist until it was exercised or lost, through waiver. Here, the other parties are insisting upon a waiver and have promptly done so.

■ It remains to determine whether such waiver exists. This requires examination of the facts. No express waiver is urged. It is insisted that such is shown by acts in connection with the litigation which are inconsistent with a desire to transfer.

Either the petition, the responses or the affidavits herein show the matters following— few of which are in dispute.

Just prior to the organization of the Northern District (April 1, 1925) there was a final hearing and submission of this case to Judge Williams in the Eastern District. This was the status of the litigation when the right to transfer this case came into existence, on April 1, 1925. What occurred thereafter bears upon the matter of waiver. April 8, 1925, Judge Williams made a restraining order, on the motion of petitioners herein for a temporary injunction, preventing payments of money by one of the defendants in that suit to another defendant and set June 30, 1925, as hearing day on the temporary injunction. This restraining order was continued in force by orders made June 30, 1925, and September 28, 1925. On November 20, 1925, the court handed down an opinion with findings of fact and conclusions of law favoring defendants. December 1, 1925, decree was entered thereon dismissing plaintiffs' (petitioners here) complaint. On January 27, 1926, an appeal was perfected to this court by plaintiffs. Thereafter, plaintiffs (petitioners here) renewed their application for a receiver (filed November 21, 1924) and on August 4, 1926, Judge Williams appointed a receiver who qualified. After passing through this court and an unsuccessful application for certiorari to the Supreme Court, mandate issued and was filed in the District Court for the Eastern District on March 6, 1928, resulting in reversal of the decree of December 1, 1925, and instructions to proceed in accordance with the opinion. June 22, 1928, the notice of transfer was filed.

We think the above undisputed facts show a waiver. For almost eight months, petitioners permitted the case to remain on submission awaiting decision by Judge Williams. During all of that time they could have had this case transferred. They were not only silent, but they sought from Judge Williams

and obtained injunctive relief within a few days after their right of transfer came into existence. While the appeal was pending they sought from Judge Williams and obtained the appointment of a receiver to conserve funds in dispute. Such acts are inconsistent with and opposed to any desire to transfer the case. They are consistent only with an intention to and amount to the further prosecution of the suit in the court in which it then was. Congress did not intend that a party could voluntarily proceed in the court where the suit was filed until he became dissatisfied and then transfer the case. It gave him the privilege to go ahead in one or the other court, as he desired, but he could not experiment with both.

We think this waiver destroyed the right to transfer where the other parties are relying upon the waiver, as is here shown by their presence and acquiescence in the order appointing the special master and the appearance here for respondents by one of their counsel.

The mandamus is controlled by the same considerations as those above stated regarding the prohibition.

The result is that the writs should be denied.

While what has been said disposes of this case, it seems advisable to advert to another matter in order to remove all doubt as to the effect of the previous decision (22 F. (2d) 81) of this court.

It would seem necessary, from the repeated language in the brief for respondent, to remove an erroneous impression that seems to have been acquired, or is, at least, asserted, and that is that this case was remanded for a new trial. If the order and mandate so stated, they did not conform to the directions of the opinion. We presume the order followed substantially the language of the opinion. In that opinion and the decision rendered thereunder, all the issues were resolved in favor of the appellants. The leases under which appellees had operated were declared void and it followed, of course, that appellees must respond in damages for the removal of the ores from the property of appellees. This would involve an accounting disclosing the amount so removed and the legitimate cost and expense of removal; also the specific amount recoverable against the individual appellees. In all these respects there was not before this court on appeal the necessary data from which a satisfactory conclusion could be reached. There was involved the claim against the Ewert estate, which has now been settled, and is removed from the controversy. Also the operation by Skelton, and afterwards by the Skelton Lead & Zinc Company, and by the Welch Mining Company. Skelton is now deceased and his estate is involved. The relationships between these parties are so interlaced and complex that it requires the investigation before a master to determine the amount to be recovered from each. It was for this reason and for this purpose that the case was remanded and the further proceedings referred to are such ascertainments by way of accounting.

The writs are denied at the costs of petitioners.