**UNITED STATES v. WESTBROOK et al.**

**Cr. No. 4150.**

United States District Court
W. D. Arkansas. Texarkana Division.

Aug. 7, 1953.

194

Charles Beasley, Jr., Fort Smith, Ark., and Charles Atkinson, Fayetteville, Ark., for plaintiff.

Shaver, Tackett & Jones, Texarkana, Ark., for defendant Simmington.

W. S. Atkins, Hope, Ark., and Robert Steel, Nashville, Ark., for defendant Westbrook.

LEMLEY, Chief Judge.

This cause comes on for hearing upon the motion of the defendants to dismiss counts one and two of the indictment returned against them by the Grand Jury and alternatively for an order striking certain paragraphs of said count one; the motion has been submitted upon written briefs.

The indictment purports to charge the defendants with conspiring to "embezzle, abstract, purloin and wilfully misapply moneys, funds and credits" of the Bank of Dierks, Arkansas, and to make false entries in the books, reports and statements of said bank with intent to deceive the Federal Deposit Insurance Corporation, and with having committed various overt acts in furtherance of said conspiracy,[1] and further purports to charge them with having made a certain false entry in the "Daily Statement Ledger" of said bank,[2] and with having embezzled, abstracted, purloined and wilfully misapplied certain "moneys, funds and credits of said insured bank, to-wit, $1400.00", and with having aided and abetted therein.[3] The defendants are described as having been agents and employees of said bank at the times referred to in the indictment.

As originally returned by the Grand Jury, the indictment consisted of eleven counts; the first of these counts was the conspiracy count; Counts two through ten were false entry counts, and count eleven was the embezzlement count. After the indictment was filed, the defendants appeared before the Court for arraignment, at which time the Government on its own motion dismissed counts three to ten, both inclusive, leaving only counts one, two, and eleven. Thereupon, the defendants prior to pleading to the remaining counts filed the pending motion; as indicated, said motion

1. The conspiracy count is laid under 18 U.S.C.A. § 371, which provides that: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. The false entry count is laid under 18 U.S.C.A. § 1005, which provides in substance that whoever shall make any "false entry in any book, report, or statement" of any bank, the deposits in which are insured by the Federal Deposit Insurance Corporation "with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal De-

posit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

3. The embezzlement count is laid under 18 U.S.C.A. § 656, which provides in substance that any officer, director, agent or employee of a bank, the deposits in which are insured by the Federal Deposit Insurance Corporation who "embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds, or credits of such bank, or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; * * *."

is directed at counts one and two only; count eleven is not challenged, but the defendants have not as yet been arraigned upon it.

Before taking up the contentions of the parties, we will analyze in some detail the two counts of the indictment which are under attack, and for clarity refer to some extent to the contents of counts three through ten which have been dismissed:

The first count charges that "during the month of August, 1952, and prior thereto", the defendants, being agents and employees of the Bank of Dierks at Dierks, Arkansas, the deposits in which were insured by the FDIC, "did conspire to embezzle, abstract, purloin and wilfully misapply moneys, funds and credits of said bank and to make false entries in the books, reports and statements of said bank with intent to deceive the Federal Deposit Insurance Corporation". It is further charged that "in furtherance of said conspiracy" certain overt acts were committed, to-wit: (1) that the defendant, Opal Henrietta Simmington, made the false entries described in counts two through ten of the indictment, which "descriptions are incorporated by reference into this Count"; (2) that both defendants "talked to Alonzo Canaday about reimbursing the said Bank of Dierks for a money shortage existing"; (3) that both defendants "talked to Ray Waters about reimbursing the said Bank of Dierks for a money shortage existing"; (4) that the defendant, Westbrook, refused "to send bank statements regularly to depositors in the Bank of Dierks"; and (5) that the defendant, Opal Henrietta Simmington, "gave to W. L. Peek her personal check for $1400.-00".

The second count of the indictment consists of three numbered paragraphs, in the first of which the defendants are described as being agents and employees of the Bank, and in which it is alleged that they did, "with intent to deceive the Federal Deposit Insurance Corporation, make and cause to be made the false entry described in paragraph 3 of this count in the records of said Bank". Paragraph 2 of this count gives the date upon which the alleged false entry was made, which date is August 13, 1952. Paragraph 3 reads as follows: "The false entry referred to in paragraph 1 of this count was made by entering the figures '417 817 64' in the Daily Statement Ledger of said Bank on the page and in the column bearing the handwritten date 'Aug 13 '52', being on the 30th line of this page and directly opposite the handwritten word 'Deposits'."

Counts three through ten are similar to count two in that each is a false entry count and each purports to charge the defendants with making a false entry; said counts differ from count two with respect to dates, the amounts of money involved, and the particular books are records alleged to have been falsified; but resemble count two in that each consists of three numbered paragraphs, the second of which purports to give the date upon which the alleged false entry was made, and the third of which purports to describe the particular false entry involved. It was obviously the purpose of the draftsman of the indictment to incorporate by reference in the first paragraph of each of counts three through ten the allegations of the first paragraph of count two of the indictment; but through error the first paragraph of each of these counts was made to read: "The allegations of paragraph 1 of *Count 1* are re-alleged." (Emphasis added.) As stated, Count one of the indictment is the conspiracy count, and this error of draftsmanship necessarily prevented counts three through ten from stating any offenses; it was for this reason that said counts were dismissed.

The eleventh count of the indictment charges that on or about November 26, 1951, the defendants, "being agents and employees of the Bank of Dierks, Dierks, Arkansas, the deposits of which were at the time insured in the Federal Deposit Insurance Corporation, did embezzle, abstract, purloin and wilfully misapply certain moneys, funds and credits of said insured bank, to-wit, $1400.00, and did aid and abet therein".

In support of their attack upon the first count, the defendants contend in their briefs that said count is defective in that it "does not limit the allegation of conspiracy to a three-year period", in that it

charges the defendants conspired to "embezzle, abstract, purloin and wilfully misapply moneys, funds and credits of said bank" without differentiating between moneys, funds and credits and without specifying how much money or the kind and nature of the funds and credits of the bank which the defendants are alleged to have conspired to embezzle, purloin and wilfully misapply; in that it does not set out the tenor of the false entries which it is alleged that the defendants conspired to make; and in that it fails to allege any overt acts in furtherance of the alleged conspiracy. We cannot agree with any of these contentions.

■■ As to the proposition that the first count of the indictment does not limit the allegation of the conspiracy to a three-year period, it is sufficient to say that the crime of conspiracy is a continuing offense, and that it is not necessary to limit it to the three-year period preceding the return of the indictment. Pinkerton v. U. S., 5 Cir., 145 F.2d 252; see also U. S. v. Johnson, 7 Cir., 123 F.2d 111, 123. It will, of course, be necessary at the trial of the case for the Government to prove at least one overt act committed within the three-year limitation period. Pinkerton v. U. S., supra.

■ In taking up the contentions that the first count is fatally defective in not differentiating between "moneys", "funds" and "credits" of the bank and in failing to set out the tenor of the alleged false entries, which we find it convenient to consider together, it should be pointed out that the gist of the crime of conspiracy is the unlawful agreement and that where a conspiracy is alleged it is not necessary to set out the criminal object of the conspiracy with as great certainty as is required in cases where such object is charged as a substantive offense.

In Wong Tai v. U. S., 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545, this rule is stated as follows: "* * * It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, or to state such object with the detail which would be required in an indictment for committing the substantive offense, Thornton v. United States, 271 U.S. 414, 423, 46 S.Ct. 585, 70 L.Ed. 1013; Jelke v. United States, 7 Cir., 255 F. 264, 275; Anderson v. United States, 8 Cir., 260 F. 557, 558; Wolf v. United States, 7 Cir., 283 F. 885, 886; Goldberg v. United States, 8 Cir., 277 F. 211, 213. In charging such a conspiracy 'certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is' necessary. Williamson v. United States, supra [207 U.S.] 447, 28 S.Ct. 171; Goldberg v. United States, supra [277 F.] 213. * * *"

Williamson v. U. S., supra, involved a conspiracy to suborn perjury; it was alleged that the conspirators agreed to suborn numerous persons to make false oaths before a United States Commissioner in the judicial district of Oregon whereby they could fraudulently obtain title to certain public lands for the use and benefit of the alleged conspirators. The contention was made that the indictment was fatally defective because "of an omission to directly particularize various elements, claimed to be essential to constitute the offense of perjury, and other elements necessary to be averred in respect of the alleged suborners". 207 U.S. at page 447, 28 S.Ct. at page 171. In rejecting this contention the Court said:

"This is based upon the assumption that an indictment alleging a conspiracy to suborn perjury must describe not only the conspiracy relied upon, but also must, with technical precision, state all the elements essential to the commission of the crimes of subornation of perjury and perjury, which, it is alleged, is not done in the indictment under consideration. But in a charge of conspiracy the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the con-

spiracy." 207 U.S. at page 447, 28 S.Ct. at page 171.

The Court after quoting from the indictment went on to say:

"These allegations plainly import, and they are susceptible of no other construction, than that the unlawful agreement contemplated a future solicitation of individuals to enter lands, who in so doing would necessarily knowingly state and subscribe under oath material false statements as to their purpose in respect to entering the land, etc., and known to be such by the conspirators. There is no reason to infer that the details of the unlawful conspiracy and agreement are not fully stated in the indictment, and it may therefore, be assumed that the persons who were to be suborned, and the time and place of such subornation, had not been determined at the time of the conspiracy, except as might be inferred from a purpose to procure the persons to be suborned to come before the United States commissioner for the district of Oregon named in the indictment. It was not essential to the commission of the crime that in the minds of the conspirators the precise persons to be suborned, or the time and place of such suborning, should have been agreed upon; and as the criminality of the conspiracy charged consisted in the unlawful agreement to compass a criminal purpose, the indictment, we think, sufficiently set forth such purpose." 207 U.S. at page 449, 28 S.Ct. at page 171.

In Thornton v. U. S., supra, the defendants were charged with conspiring to "deter and prevent certain employees of the Bureau of Animal Industry from discharging their duties in supervising the dipping of, and causing to be dipped, cattle in order to prevent the spread of splenetic fever among them, and to eradicate the cattle fever tick, and that for this purpose the defendants used deadly weapons and killed one such employee and wounded others, * * *." 271 U.S. at page 418, 46 S.Ct. at page 586. The indictment was attacked on the ground that it failed to allege that the cattle being dipped were the subject matter of interstate commerce or had in any way under the law become subject to the supervision or control of the Secretary of Ag-

riculture, or that what the employees were doing was to prevent the spread of communicable disease among cattle from one state to another. 271 U.S. at page 423, 46 S.Ct. at page 587. The Court said:

" * * * The charge is of a conspiracy to commit the offense of an assault upon employees of the Bureau of Animal Industry, to prevent the execution of their duties as such and does not charge the substantive offense itself. The rules of criminal pleading do not require the same degree of detail in an indictment for conspiracy, in stating the object of the conspiracy, as if it were one charging the substantive offense. * * *

"The assaults upon the employees of the Bureau of Animal Industry and the interference with their duties were described in the indictment as having to do with the inspection of suspected cattle and the supervision of their dipping. As their duties in connection with suspected and diseased cattle were described in the statute as imposed for the purpose of preventing the spread of contagious cattle disease from one state to another it is sufficient certainty to a common intent to describe generally that they were performing their duties under the statute in the supervision and dipping of cattle, without further definition." 271 U.S. at pages 423–424, 46 S.Ct. at page 588.

In Gerson v. U. S., 8 Cir., 25 F.2d 49, 52, the Court quoted from the earlier Eighth Circuit decision in Anderson v. U. S., 8 Cir., 260 F. 557, 558, where it was said: "As the conspiracy is the gist of the offense, it is undoubtedly true that the offense which it is charged the defendant conspired to commit need not be stated with that particularity that would be required in an indictment charging the offense itself." The same rule was recognized in Middleton v. U. S., 8 Cir., 49 F.2d 538, in which the Court said:

" * * * The indictment alleged, in substance, that appellant and others at a time and place named, knowingly and unlawfully conspired to commit the offenses against the United States of possessing intoxicating liquor in violation of the National Prohibition Act, and of transport-

ing intoxicating liquor in violation of the National Prohibition Act. The count charging conspiracy is somewhat meager in stating the usual details of an alleged conspiracy, but the allegation properly was as broad as the conspiracy itself. * * * If there was an unlawful agreement by the defendants to possess and transport intoxicating liquor in violation of the National Prohibition Act * * *, and acts were done by the defendants to carry out the agreement, then there was a conspiracy to violate that law, although no method of executing the conspiracy may have been agreed upon. * * * It is not necessary to state the details of the offense which is the object of a conspiracy as particularly as in charging the commission of the offense. * * *" 49 F.2d at page 539.

Certain language in the case of Davis v. U. S., 5 Cir., 86 F.2d 45, 46, appears to us to be particularly applicable here. In that case the defendants were indicted for conspiracy to illegally transport, sell and transfor whisky; by special demurrers they complained "that sufficient details of the conspiracy are not given, nor any facts to identify the transportation, possession, or sale of the liquor or the container of the liquor, or when, where, or by whom the whisky was removed or concealed, or in what way defendant was carrying on a retail liquor business, seeing that Georgia is a dry state and no such business there could be taxed by the United States". In disposing of these contentions the Court said: "We think the conspiracy, which is the gist of the offense, is sufficiently stated. The time, place, and persons concerned are set forth, and the purpose of it is alleged to be unlawfully to do acts in reference to whisky which the court judicially knows would be a violation of three statutes of the United States, it being indeed alleged that the acts were contrary to the form of the statute. A greater particularity is not necessary and may be impossible. It may be that no particular whisky in any particular containers was contemplated in forming the conspiracy, but any whisky in any sort of containers that might come to hand."

 We are of the opinion that the principles laid down in the foregoing cases

govern here, and that the object of the alleged conspiracy is set forth "with certainty to a common intent". Of necessity, an indictment charging a conspiracy to mulct a bank and to falsify its records must be drawn in general terms; this is true because the unlawful confederation and agreement between or among the conspirators is, in the great majority of cases at least, itself general. Such conspirators do not ordinarily agree to steal a specific sum of money, or specific stocks, or bonds, or other assets of the bank; their agreement is usually to get away with as much as they can. Nor do they ordinarily agree to falsify any particular records in any particular way; their agreement in this respect is usually to falsify such records as may be necessary to conceal their peculations; records which may have been falsified today may have to be corrected tomorrow; and unforeseen contingencies may require them to falsify records which had theretofore been untouched.

In this connection the defendants have cited U. S. v. Greve, D.C.Mo., 65 F. 488; U. S. v. Smith, D.C.Ky., 152 F. 542; White v. U. S., 10 Cir., 67 F.2d 71; Batchelor v. U. S., 156 U.S. 426, 15 S.Ct. 446, 39 L.Ed. 478; U. S. v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520, and certain other cases. We find it unnecessary to analyze these cases at the present time since none of them involved an indictment for conspiracy; all of them charged substantive offenses and are distinguishable from the instant case on that basis. We shall have occasion to refer to some of them later in another connection, however.

 Taking up the overt acts alleged in the first count, we may say at the outset that it is well settled that to sustain a charge of conspiracy only one overt act need be alleged and proved, and that overt acts need not themselves be criminal, and that the indictment need not set forth how the alleged overt act or acts in fact furthered the conspiracy. In Davis v. U. S., supra, the overt act alleged was that the defendant had received certain money from one Henry W. Grimsley; it was argued, as it is argued here, that this overt act was insufficient in that it did not show how it

was in furtherance of the alleged conspiracy; the Court said: "Overt acts need not be pleaded with the fullness that would be necessary if they were themselves charged as crimes. They need not in themselves be criminal. The mere receipt of money ordinarily is not, but, if done to further an unlawful conspiracy, it completes that crime. The indictment need not explain how the money was to be used or how its receipt tended to carry out the conspiracy. That is matter of proof." 86 F.2d at page 46. To the same effect see Marron v. U. S., 9 Cir., 8 F.2d 251, and Luxenberg v. U. S., 4 Cir., 45 F.2d 497.

■ In discussing the allegations of overt acts contained in the conspiracy count of this indictment we disregard for present purposes the allegations relative to the making of false entries in the books of the bank, and confine ourselves to the allegations relative to the alleged conversations with Canaday and Waters, the alleged refusal of the defendant Westbrook, to send out bank statements regularly, and the alleged giving by Mrs. Simmington of her personal check to W. L. Peek. If any one of these allegations is sufficient, the conspiracy count may stand as far as an allegation of an overt act is concerned. We think that all of these allegations are sufficient as allegations of overt acts. Whether the Government can prove them or not, and whether or not it can show that they were in fact undertaken to carry the alleged conspiracy into effect are, of course, entirely different questions.

Admittedly, it is somewhat difficult to see how conversations relative to reimbursing the bank for existing money shortages would have been in furtherance of a scheme to steal money from the bank, but we do not feel that we can say as a matter of law that they could not, in some way or another, have furthered said alleged scheme. The same comment can be made with respect to the allegation that Mrs. Simmington gave one W. L. Peek (not identified other than by name) her personal check for $1,400. On the other hand, it is clear, to us at least, how a refusal on the part of Mr. Westbrook to send out bank statements could and would have furthered the defendants' alleged conspiracy. It is a well known fact that many, if not most, bank frauds and embezzlements involve falsification of the individual accounts of depositors, usually savings accounts, and that it is necessary for the concealment of the scheme that the depositors be kept unaware of the true condition of their accounts; the failure, if any, of Mr. Westbrook to send out regular statements to the depositors would, of course prevent them from finding out what deposits they were supposed to have made and what checks they were supposed to have drawn, and in that manner might have furthered the conspiracy, if one existed.

■ Counsel contend that the alleged conversations with Canaday and Waters took place after the termination of the alleged conspiracy. The indictment does not so allege, and in the consideration of the instant motion we cannot look beyond that instrument. It is alleged that the overt acts were committed "in furtherance of said conspiracy", which is inconsistent with the idea that any of them were committed after the conspiracy had terminated. As stated, conspiracy is a continuing offense, and if the defendants conspired together and proceeded to carry their conspiracy out, shortages in the bank would immediately have come into existence and possibly would have continued until the scheme was detected; hence the conversations may well have taken place, if they took place at all, "during the month of August, 1952, and prior thereto", which is the period alleged in the indictment as being that in which the conspiracy was operative. As a matter of fact, no dates are alleged with respect to any of the overt acts; but this is not material. Dealy v. U. S., 152 U. S. 539, 546, 14 S.Ct. 680, 38 L.Ed. 545; Goldberg v. U. S., 5 Cir., 297 F. 98, 101. Even if we should hold, however, that the allegations with respect to the supposed conversations were insufficient, the defendants would not be aided thereby since there would remain the allegations with respect to the bank statements and to the giving of Mrs. Simmington's personal check to W.

L. Peck, and it is only necessary that one overt act be alleged. De Lacey v. U. S., 9 Cir., 249 F. 625, L.R.A.1918E, 1011; Onderdonk v. U. S., 5 Cir., 16 F.2d 116. Of course, it should be recognized that if the proof shows that any of the overt acts alleged in the indictment took place after the termination of the conspiracy, such act or acts would not be sufficient to establish the guilt of the defendants on the conspiracy charge; and we might say in this connection that we are not at all sure that the Government has alleged a conspiracy continuing after the month of August, 1952; and it may be that events, if any, transpiring after that month are immaterial.

■ Before taking up the defendants' alternative prayer for an order striking from count one certain of the allegations of overt acts, we shall discuss the defendants' attack on count two. As stated, this count charges the making of a false entry on August 13, 1952, in the Daily Statement Ledger of the bank by inserting the figures "417 817 64" opposite the word "Deposits" on the thirtieth line of the page and in the column bearing the handwritten date, "Aug 13 '52". While it is alleged that this entry was false, there is no allegation purporting to show wherein its falsity consisted. In view of this situation we do not believe that the count sufficiently advises the defendants of the charge against them so as to enable them to prepare their defense, and for that reason it should be dismissed.

In considering the sufficiency of this count we have made a diligent search but have been unable to find a case which we consider to be squarely in point one way or the other; perhaps one reason for our inability to find such a case is that it appears from the decisions which we have read that throughout the years draftsmen of indictments charging false entries have made it a practice to set out not only the fact that the entry in question was false but also in what respect it was false. See for example: Clement v. U. S., 8 Cir., 149 F. 305, 315; Phillips v. U. S., 8 Cir., 201 F. 259, 261; Wood v. U. S., 4 Cir., 204 F. 55, 56; Lewis v. U. S., 8 Cir., 22 F 2d 760, 765; and Caldwell v. U. S., 10 Cir., 36 F.2d 742, 743.

■ The entry referred to, if in fact false at all, could be false in at least three different ways: the correct figure may have been more than $417,817.64, or it may have been less, or said entry may have been false in that it was fictitious in the sense that it bore no reasonable relationship to the actual deposits in the bank, in other words was plucked out of thin air. The evidence relevant to a charge that the entry was fictitious might, and probably would be wholly different from the evidence relevant to a charge that there was an intentional understatement or an overstatement of deposits. It should be kept in mind in this connection that the defendants are presumed to be innocent until proven guilty, and that an indictment must be tested upon a presumption that the defendants have no knowledge of the facts charged against them. White v. U. S., supra.

While, as stated, we have found no case which we consider to be squarely in point here, certain language of the Courts in Dow v. U. S., 8 Cir., 82 F. 904, 910, and in U. S. v. Demos, D.C.Fla., 291 F. 104, persuades us that the second count of the instant indictment is insufficient, and that it must be dismissed. In Dow v. U. S., supra, the defendant was charged with making false entries in the books of a national bank with respect to certain checks; the Court said: "If it was the purpose of the government to charge the making of false entries in the books of the bank, for the reason that the receiving teller received and credited checks drawn on the bank by parties who had no funds in the bank, the correct rule of pleading would require the setting forth in the indictment of a description of the checks which it was claimed were fictitious or fraudulent, with an averment of the reasons why they were deemed to be false or valueless, in order that the accused might know that the character of the checks was attacked." In U. S. v. Demos, supra, which involved a charge of filing false income tax returns, it was

said [291 F. 105]: "\* \* \* an indictment to allege either offense [4] must contain charges showing the false and fraudulent character of the return, or statement in writing, other than a mere charge that the return or statement was 'false and fraudulent.' It is not enough to say that it is false and fraudulent. It must be stated wherein it is false and fraudulent. This is necessary, both to put the defendant on notice of what he is charged and also to protect him from a subsequent prosecution for the same offense."

It might be pointed out in connection with what we have said regarding count 2 of this indictment, and with what we may hereafter say herein with reference to other questions wherein our opinion does not agree with the contentions of the Government, that the statute of limitations has yet quite a while to run on the charges made in the indictment, and if the Government desires to re-submit any charges in the indictment to the Grand Jury, there is ample time within which to do so.

In their motion the defendants pray that numbered paragraphs two through five of the first count of the indictment be stricken as "immaterial, irrelevant and merely surplusage" which tends to their prejudice; this prayer, while not expressly so denominated, is obviously alternative to their prayer for a dismissal of the entire count, which we have already considered and determined adversely to the defendants. Numbered paragraphs two through five of the first count are the allegations relating to the conversations with Canaday and Waters, the refusal of Mr. Westbrook to send out bank statements regularly, and the giving by Mrs. Simmington of her personal check to W. L. Peek. We have already held that these allegations are good as allegations of overt acts, and the defendants are not entitled to have them stricken.

When the defendants filed their said motion, which was shortly after the Government dismissed counts 3 through 10 of the indictment, the Court requested written briefs and gave the parties stated times within which to file the same. Shortly thereafter, the Court wrote the attorneys for the parties, suggesting that certain difficult questions might arise in the trial of the case, and that it might be well to brief any such questions that occurred to the attorneys, along with the briefing of said motion. Now a question has arisen and has been argued in the briefs, namely whether the allegations contained in counts 3 through 10 which were incorporated as additional overt acts into count 1 by reference can be considered as overt acts in view of the fact that the Government has dismissed said counts. In this connection, the Government takes the position that since the allegations in these dismissed counts were incorporated by reference into count 1, they should be considered as allegations of overt acts in the trial of this case notwithstanding their dismissal as substantive counts. On the other hand, the defendants argue in their briefs that since counts 3 through 10 were dismissed, they can not be considered for any purpose. In considering this question, upon which we think we should express an opinion at this time, we will take up together the allegations in count 2, which count is being dismissed by us along with those in counts 3 through 10 which have been dismissed by the Government.

Neither side has cited us to a case which we consider to be squarely in point on this question, and we have found none. It should be noted that counts 3 through 10 are subject to the same objection which leads us to dismiss count 2; that is to say, while each of said counts alleges that a certain entry was false, each fails to allege wherein the falsity of such entry consisted; and upon motion we would have been constrained to dismiss said counts for that reason had the Government not done so for another reason, to which reference has heretofore been made. In view of the dismissal of all of these counts, we are of the opinion that the reference to them in count 1 should not be considered. Such reference adds nothing to the legal sufficiency of count 1, which we have held valid and sufficient without it, and, more-

4. Perjury and the filing of a false return.

over, the striking of such reference will not prejudice the Government since, if the said entries were, in fact made in order to effect the alleged conspiracy, the Government may prove them although they are not referred to in the indictment, notwithstanding the argument in the defendants' brief to the contrary. McKnight v. U. S., 8 Cir., 252 F. 687; Morrow v. U. S., 8 Cir., 11 F.2d 256; Culp v. U. S., 8 Cir., 131 F.2d 93. On the other hand, to leave such reference in the indictment might conceivably prejudice the defendants.

The question just discussed is not technically before us since it is not covered by defendants' said motion. If the defendants desire to squarely present it to the Court, they will be given a reasonable time after this date to file an appropriate additional motion to strike. This, however, need cause no delay in the defendants' arraignment on counts 1 and 11 of the indictment.

▉ While the defendants have not attacked count eleven of the indictment, we feel that we should make some comment with reference to a question of evidence which may come up in connection with said count when the case is tried, particularly in view of the request above mentioned, made in our letter to counsel. As heretofore stated, the eleventh count charges the defendants with embezzling, purloining, abstracting, and wilfully misapplying "certain moneys, funds and credits of said bank, to-wit, $1400.00", and with having aided and abetted therein. In U. S. v. Greve [65 F. 490], supra, cited by the defendants in support of their attack on the conspiracy count, it was held that an indictment charging that the defendant embezzled "moneys and funds" of the bank in a certain amount was fatally defective in that it did not differentiate between "moneys" and "funds"; a similar result was reached in U. S. v. Smith, supra, likewise cited by the defendants. If those cases are in point with respect to the eleventh count of this indictment, then it is defective, but in neither of those cases was the word "to-wit" used as it has been used in the instant case. We construe the term "to-wit, $1400.00", as limiting the generality of the preceding phrase, "moneys, funds, and credits", and we take it that the Government intends to charge that the defendants embezzled, abstracted, purloined, or wilfully misapplied $1,400 in money, or aided and abetted therein. When the eleventh count is so construed, we believe that the words "funds" and "credits" may be disregarded as surplusage, and that the cases just referred to are inapplicable. It should be pointed out, however, that upon a trial of the case the Government will probably be limited to proving theft, embezzlement, or misapplication of money and not permitted to prove a theft, embezzlement, or misapplication of other assets of the bank.

Let an order be entered overruling the defendants' motion to dismiss the indictment as far as count one thereof is concerned, sustaining said motion as far as count two is concerned, and overruling the defendants' motion to strike numbered paragraphs two, three, four and five of count one of the indictment, but with leave to the defendants forthwith to move for an order striking numbered paragraph "(1)" of said count one of the indictment.